**In re Janice TIPPINS, Debtors.**

**In re William L. TIPPINS and Kathy Tippins, Debtors.**

**AMERICAN GENERAL FINANCE, INC., and Merit Life Insurance Company, Plaintiffs,**

v.

**Janice TIPPINS, William Tippins, and Kathy Tippins, Defendants.**

**Bankruptcy Nos. 95–40531–JSS, 96–40303–JSS. Adversary No. 97–40696.**

United States Bankruptcy Court, N.D. Alabama, Eastern Division.

May 1, 1998.

Earl Underwood, Huntsville, AL, Robert G. McDonald, for Defendants/Debtors.

Michael Hall, Rita L. Hullett, Birmingham, AL, for Plaintiffs/Creditors.

1. Janice and William and Kathy will collectively be referred to as the "Tippins".

2. Section 105 provides:
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an

**MEMORANDUM OPINION**

JAMES S. SLEDGE, Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment filed by the defendants, Janice Tippins ("Janice") and William and Kathy Tippins ("William and Kathy") and the cross-motion for summary judgment filed by the plaintiffs, American General Finance, Inc. ("AmGen") and Merit Life Insurance Company ("Merit"). AmGen and Merit filed this adversary proceeding to enjoin Janice and William and Kathy Tippins from prosecuting a lawsuit filed against them in state court.[1] AmGen and Merit contend that the Court should enjoin the Tippins from prosecuting the lawsuit pursuant to its powers under 11 U.S.C. § 105 [2] because a victory by the Tippins in the state court case would result in relief contrary to this Court's orders confirming the Tippins' chapter 13 plans. The companies previously removed the Tippins' state court action to this Court, where a Motion to Remand remains pending. AmGen and Merit argue three separate grounds support issuing an injunction under 11 U.S.C. § 105: the doctrine of claim preclusion (also known as the doctrine of res judicata); the doctrine of judicial estoppel; and lack of standing. The Tippins contest each of these issues.

The parties have stipulated to the facts and the issues were briefed by all parties. Oral arguments were heard on January 13, 1998, and February 17, 1998. Appearing were Earl Underwood and Robert G. McDonald, attorneys for the Tippins, and Michael L. Hall and Rita L. Hullett, attorneys for AmGen and Merit. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the Court is of the opinion that AmGen's and Merit's motion for summary judgment is due to be granted and the Tippins' motion for summary judgment is due to be denied.

issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**14**

## I. FINDINGS OF FACT.

The facts are undisputed. The Tippins' motion for summary judgment adopts the facts and evidentiary submissions filed by AmGen and Merit. The undisputed facts are as follows:

In September of 1994, Janice Tippins obtained a loan from AmGen. To secure the loan, she gave AmGen a security interest in real property. As part of the loan transaction, Janice purchased credit life insurance from Merit. The cost of the insurance premiums was included in the amount AmGen financed.

Janice filed a petition for relief under chapter 13 of Title 11 of the United States Bankruptcy Code on March 3, 1995. The schedules filed with her petition did not disclose any claim or cause of action against AmGen and Merit. In Schedule D, Janice listed a secured debt to AmGen. She did not classify the debt to AmGen as contingent, unliquidated or disputed in her schedules. On March 27, 1995, AmGen filed a secured proof of claim in the ·amount of $7,691.01 arising out of the pre-petition loan it made to Janice. The proof of claim filed by AmGen included insurance premiums owed to Merit. There were no objections to AmGen's proof of claim. Janice's chapter 13 plan proposed to pay one hundred percent of all allowed claims, with interest on secured claims but no interest on unsecured claimants. Her proposed plan disclosed the debt owed to Am-Gen and proposed to pay AmGen direct. The plan did not mention any claim or cause of action against AmGen or Merit; however it did contain the following language:

> III.9. The Debtor reserves all claims and causes of action against creditors until the conclusion of the case or the running of any applicable statute of limitations, whichever is longer.

On September 6, 1995, Janice's plan was confirmed. The Confirmation Order allowed AmGen's secured claim in the amount of $7,691.01. On September 12, 1997, over two years after confirmation of her plan, Janice amended her schedules to disclose her cause of action against AmGen and Merit and to claim the cause of action as exempt property.

No objections were filed by any party to Janice's amendments.

On March 30, 1995, William and Kathy Tippins obtained a loan from AmGen, secured by a mortgage on real property. As part of the loan transaction, they also purchased credit life insurance from Merit. The cost of the insurance premiums was included in the amount AmGen financed.

William and Kathy Tippins filed their petition for relief under chapter 13 of Title 11 of the United States Bankruptcy Code on February 2, 1996. The schedules filed with their petition did not disclose any cause of action against AmGen and Merit. In their Schedule D, the couple listed a secured debt owed to AmGen. They did not classify the debt to AmGen as contingent, unliquidated or disputed. On February 15, 1996, AmGen filed a secured proof of claim in the amount of $13,-365.38 arising out of the pre-petition loan to William and Kathy. The proof of claim filed by AmGen included insurance premiums owed to Merit. There was no objection filed to AmGen's proof of claim. William and Kathy's chapter 13 plan, as amended, proposed to pay allowed secured claims in full plus interest and to pay unsecured creditors 66% of their allowed claims with no interest. In addition, the proposed plan specifically disclosed the debt owed to AmGen and proposed to pay all post-petition payments to AmGen direct. The plan did not mention any claim or cause of action against AmGen or Merit; however, the plan and the plan summary did contain the following statement:

> IV.8.b. The debtors do not waive any claim or causes of action they may have against any of their creditors.

On August 9, 1996, the couple's plan was confirmed. The Confirmation Order allowed AmGen's secured claim in the amount of $13,365.38. On November 4, 1996, William and Kathy amended their schedules to disclose their cause of action against AmGen and Merit and to claim the cause of action as exempt property. No objections were filed to the amendments.

The Tippins contend that they were without knowledge of their claims against AmGen and Merit until August of 1996, after Janice's

plan was confirmed but prior to confirmation of William and Kathy's plan. On July 10, 1997, they filed a state court action against AmGen and Merit in the Circuit Court of Calhoun County, Alabama. Their state court action consists of claims of fraud, misrepresentation, conspiracy and violations of the Alabama Mini–Code. These claims arose out of the pre-petition loans made by AmGen to each of the debtors. On August 20, 1997, AmGen and Merit removed the state court action to this Court pursuant to 28 U.S.C. §§ 1441 and 1452. At the same time, AmGen and Merit also initiated this adversary proceeding requesting that this Court enjoin the Tippins from proceeding with the state court action pursuant to its powers under 11 U.S.C. § 105. The Tippins filed a motion to remand on September 11, 1997. In support of their motion, the Tippins allege that the state court is the proper forum because their claims are based upon state law. By agreement of the parties, the motion to remand is currently pending before the Court and is awaiting decisions on the current motions for summary judgment. Additionally, the Tippins filed a counterclaim alleging that this adversary proceeding violated 11 U.S.C. § 362(h) and was an abuse of process.

On November 20, 1997, the Tippins filed a motion for summary judgment on AmGen and Merit's complaint and their counterclaims. AmGen and Merit filed a cross-motion for summary judgment on their complaint and the Tippins' counterclaims on November 21, 1997. On January 16, 1998, the Court entered a Final Judgment granting AmGen's cross-motion for summary judgment on the Tippins' counterclaims and dismissing the Tippins' counterclaims with prejudice.

## II. JURISDICTION.

This Court has jurisdiction over the instant case using the analysis that this Court used in *Roper v. American Health & Fire Ins. Co. (In re Roper)*, 203 B.R. 326 (Bankr.N.D.Ala.1996). The facts in *Roper* were identical to the facts in this case, although the legal issues were different. The jurisdictional issue in *Roper* is essentially the same. In *Roper*, this Court concluded that it had jurisdiction over a state law cause action filed by a Chapter 13 debtor-plaintiff so long as the plan did not pay unsecured claims the present value of their allowed claim. *Id.* at 332–33. In the instant case, the Janice Tippins bankruptcy case pays 100% of allowed claims but it does not pay interest to unsecured claims. The William and Kathy Tippins bankruptcy case pays only 66% to unsecured claims. Thus, following *Roper*, this Court has jurisdiction over the instant action with respect to both the Janice Tippins' and William and Kathy Tippins' bankruptcy cases. 28 U.S.C. § 1334(b).

Moreover, there is a second basis for jurisdiction in this case. AmGen and Merit filed this action to enforce the terms of the Confirmation Orders in the Tippins' two pending chapter 13 cases. Every court necessarily has jurisdiction where the request for relief is to enforce a judgment that the court has issued. *See, e.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 868 (5th Cir.1984). A bankruptcy confirmation order in a bankruptcy case is a judgment for this jurisdictional purpose. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir.).

## III. STANDING.

AmGen and Merit contend that a § 105 injunction should issue for three reasons. The first reason is the their contention that the Tippins do not have standing to pursue the actions against AmGen and Merit. In opposition to this argument, the Tippins allege that they have standing to assert their claims against AmGen and Merit under 11 U.S.C. § 522(h).[3] Section 522(h) of the

---

**3.** 11 U.S.C. § 522(h) provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and (2) the trustee does not attempt to avoid such transfer.

Bankruptcy Code grants a debtor limited power to avoid transfers or recover a setoff under §§ 547, 548, 549, 724(a) and 553, if the property could have been claimed exempt. In the case at hand, the Tippins do not seek relief under any of these sections. To the contrary, the Tippins seek to bring a prepetition cause of action against AmGen and Merit. A prepetition cause of action is property of the bankruptcy estate. *See* 11 U.S.C. § 541(a).

The cases relied upon by the Tippins, *Deel Rent–A–Car v. Levine*, 721 F.2d 750 (11th Cir.1983) and *Christy v. Heights Fin. Corp.*, 101 B.R. 542 (C.D.Ill.1987) are not applicable to this adversary proceeding. The Court notes that both of these cases were chapter 7 cases with a different statutory structure. In *Deel*, the debtor sought to avoid a judgment lien as a preference pursuant to §§ 522(f) and 547(b). The bankruptcy court ruled against the debtor on the § 522(f) claim but for the debtor on his § 547(b) claim. The court found the debtor had standing to assert the claim and that all the elements of a preference were present.

*Deel* is not relevant to the issue at hand. First, as stated above, the Tippins do not seek to avoid a transfer but, instead, to assert a claim based on a transfer. Second, the purpose of § 547 is to avoid a payment or other prepetition transfers made to a creditor which increases the creditor's recovery at the expense of other similarly situated creditors. WILLIAM L. NORTON, JR., 3 NORTON BANKRUPTCY LAW AND PRACTICE 2D § 57:1 at 57:3 (1997). This is not the situation in the present action.

In *Christy*, the second case the Tippins rely upon, the plaintiffs filed a Chapter 7 petition and, subsequently, filed a Truth–In–Lending (TILA) claim against a creditor in the district court. The court, following Seventh Circuit precedent, found the TILA claim was not a compulsory counterclaim that the debtors were required to bring in the bankruptcy claims process on the underlying debt. *Christy*, 101 B.R. at 544. The *Christy* court, in reaching its decision, relied on *In re Smith*, 640 F.2d 888 (7th Cir.1981) which involved chapter 7 debtors who disclosed their causes of action against the creditors.

*Smith* does not assist this Court in deciding the standing issue for several reasons. In this instance, the Tippins did not disclose the causes of action in their plans. Instead, they amended their schedules to include them as exempt after their Chapter 13 plans had been confirmed. Furthermore, the Tippins ignore Eleventh Circuit and Alabama precedent. The Eleventh Circuit has stated that TILA claims are compulsory counterclaims. *Heaven v. Trust Co. Bank*, 118 F.3d 735, 738 (11th Cir.1997); *Plant v. Blazer Fin. Servs., Inc. of Georgia*, 598 F.2d 1357, 1363 (5th Cir.1979). Alabama has also determined that TILA claims are compulsory counterclaims. *Ex parte Fletcher*, 429 So.2d 1041, 1044 (Ala. 1982). Absent persuasive counter-authority, this Court concludes the Tippins do not have standing under § 522(h) to bring their claims.

When a debtor files a chapter 13 petition, an estate is created and "all legal or equitable interests of the debtor in property" become property of the estate. *See* 11 U.S.C. §§ 541(a)(1), 1306. The scope of § 541 is broad and includes as property of the estate causes of action which accrue to the debtor pre-petition. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983) (discussing the scope of § 541); *Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209, 1210 (11th Cir.1997) (discussing the scope of § 541); *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir.1988) (trustee succeeds to all causes of action that debtor holds at the time the petition is filed); *Roper*, 203 B.R. at 333 (all causes of action in which a debtor may have an interest become property of the estate at the time of filing); *In re Shoemaker*, 155 B.R. 552 (Bankr.N.D.Ala.1992). Under the Bankruptcy Code, the trustee is the representative of the estate, and, consequently, succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed. *Harrell*, 858 F.2d at 669; *Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d 1556, 1559 (11th Cir.1985); *Shoemaker*, 155 B.R. at 554.

Section 1327(b) states that *"[e]xcept as otherwise provided in a plan or order confirming the plan,* the confirmation of a

plan vests all the property of the estate in the debtor." 11 U.S.C. § 1327(b) (emphasis added). Section 1327(b) essentially "allows the bankruptcy court to determine when the property shall revest in the debtor." *Roper v. American Health & Fire Ins. Co. (In re Roper)*, 203 B.R. 326, 333 n. 7 (Bankr. N.D.Ala.1996). The confirmation orders in each of the Tippins' cases specifically provide that "the property of the estate shall not vest in the debtor(s) until a discharge is granted under chapter 13 or [their] case[s][are] dismissed out of Court." Consequently, confirmation of the Tippins' chapter 13 plans vested the property of the estate in the trustee, and the property remains so vested until the case is dismissed or a discharge is granted. *Id.* at 333. *See also In re Hoffmeister*, 191 B.R. 875, 878 (D.Kan.1996), *aff'd* 98 F.3d 1349 (10th Cir.1996) (concluding that insurance proceeds paid for hail damage to debtors' automobile were within the chapter 13 estate where the confirmation order provided that estate property did not revest in the debtor until the bankruptcy court approves the trustee's final report and account.), *In re Minor*, 177 B.R. 576, 580 (Bankr.E.D.Tenn. 1995) (holding that workers' compensation awards remained property of the estate despite confirmation of the debtors' plans where the confirmation orders specifically provided that property of the estate did not vest in the debtor until the completion of the plan). AmGen and Merit Life are correct that the Tippins' causes of action are property of the estate and the trustee is generally the proper party to assert them before the Court.

However, AmGen and Merit Life are mistaken in asserting that the debtors do not have the capacity to sue or be sued. They claim that 11 U.S.C. § 1303 does not provide the debtor with the right to sue or be sued under 11 U.S.C. § 323. Section 1303 provides:

> **§ 1303. Rights and powers of debtor.**
>
> Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title.

Section 323(b) states: "The trustee in a case under this title has capacity to sue and be sued." The creditors however do not consider the legislative history which includes the following comment:

> [Section 1303] does not imply that the debtor does not also possess other powers concurrently with the trustee. For example, although Section 323 is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued.

124 Cong.Rec. H11106 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); S17423 (daily. ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

■ The Code allows a chapter 13 debtor limited rights to bring a cause of action. The Code specifies that Chapters 1, 3, and 5 apply to Chapter 13 cases.[4] Therefore, if any section within these chapters permits a debtor to bring an action, then a chapter 13 debtor has standing to bring that particular cause of action.[5] The Tippins, however, have failed to show that they have standing under any section of the Code to bring this action.

Nonetheless, the Court must consider whether the Tippins' claims of exemption in these actions affect their standing. A chapter 13 debtor has the right to claim certain property as exempt. 11 U.S.C. § 522(b);

---

4. 11 U.S.C. § 103 provides:
 (a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title.

5. This interpretation is consistent with the Code, case law and legislative history. For example, subsection 522(h) grants the debtor the right to avoid a transfer of property or recover a setoff. Thus, a chapter 13 debtor could bring this cause of action under the Code. Section 544, however, only mentions the trustee as a party who can assert a cause of action. In the past, courts allowed debtors to use the trustee's avoidance powers under 11 U.S.C. § 544. The Fifth Circuit recently noted that many of the courts are now receding from the position that a debtor may exercise such avoidance powers. *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 296 (5th Cir.1997). While acknowledging the "realities" of chapter 13 bankruptcies and the trustee's limited role, some courts conclude there is no explicit statutory authorization for the debtor to seek avoidance. *Id.* at 297.

*Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991). Fed. R.Bankr.P. 1009(a) allows debtors to amend their schedules "as a matter of course at any time before the case is closed." Therefore, it is of no consequence that the Tippins' plans have been confirmed because their cases have not been closed. Under the Code, a party in interest must object to a claim of exemption; failure to do so results in the property being exempt. 11 U.S.C. § 522(*1*); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–644, 112 S.Ct. 1644, 1648–1649, 118 L.Ed.2d 280 (1992). In this instance, no party in interest objected to the exemptions and therefore the Tippins obtained a property right in the lawsuit and its proceeds.[6] That property interest necessarily creates standing in the debtor. If this were not the case, we would be faced with the untenable position of the debtor having a property interest in the action or right. If that right were a tort, then the result would be that the chapter 13 trustee could not likely prevail because most tort actions cannot be won without damages. If the damages were divorced from the right or cause of action, then the right is in effect destroyed. An absurd result cannot be a correct analysis of the law.

In the instant case, Janice Tippins and William and Kathy Tippins did not claim these causes of action as exempt in their original schedules. William and Kathy filed a post-confirmation amendment to their schedules claiming this cause of action as an exempt asset. Because there were no objections to their claims of exemption, their claim is exempt and they have standing to sue AmGen and Merit. Likewise, Janice did not file her amendments to claim her cause of action against AmGen and Merit Life as exempt until after she sued the companies. Nonetheless, her post-confirmation amendments give her standing to pursue causes of action. Thus, each of the Tippins has standing to pursue these causes of action against AmGen and Merit.

## IV. SUMMARY JUDGMENT.

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides for the granting of summary judgment if ". . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The record as well as all possible inferences must be read in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Summary judgment should be denied where there is reason to believe that the better course would be to proceed to trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–2514, 91 L.Ed.2d 202 (1986). The moving party has the burden of establishing entitlement to summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

## V. CLAIM PRECLUSION.

### 1. Introduction to Claim Preclusion.

■ AmGen and Merit contend that the Confirmation Orders bar the Tippins' state law claims under the doctrine of claim preclusion.[7] This rule prohibits relitigation of

6. The Ninth Circuit B.A.P. takes the position that if a claimed cause of action results in a recovery in excess of the claimed exemption, the excess belongs to the Trustee. *Bronner v. Gill (In re Bronner),* 135 B.R. 645 (9th Cir. BAP 1992). In the Eleventh Circuit, the excess belongs to the debtor, not to the Trustee. *In re Green,* 31 F.3d 1098 (11th Cir.1994). But, under either analysis, the Debtor obtains a property interest in the property claimed as exempt. In *Bronner,* the court held that an exemption claimed by debtors is simply an interest in any potential recovery from the lawsuit up to the amount they are entitled to exempt. *Id.* at 648. It is not an absolute right to retain the lawsuit itself. *Id. Bronner* was decided prior to Supreme Court's decision in *Taylor v. Freeland & Kronz,* 503 U.S.

638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). In *Taylor* the Court held that the trustee's failure to object to a claim of exemption within the time constraints of Rule 4003 precluded him from challenging the validity of the exemption at a later date. *Id.* at 642, 112 S.Ct. at 1647–48. Even though the exemption claim had no colorable statutory basis, the Court allowed the debtor to retain the entire proceeds of the lawsuit. *Id.* Thus, *Bronner* has been partially overruled by *Taylor* and does not assist this Court.

7. The parties refer to claim preclusion by its more·familiar name, res judicata. The Eleventh Circuit has in its more recent cases used the term "claim preclusion." This Court will use the Eleventh Circuit's preferred term.

the same cause of action between the same parties or their privies when there has been a valid final judgment on the merits by a court of competent jurisdiction. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1550 (11th Cir.). Claim preclusion generally requires that four conditions must be satisfied: (1) the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process; (2) the judgment must be final and on its merits; (3) there must be identity of both parties or their privies; and (4) the later proceeding must involve the same cause of action as involved in the earlier proceeding. *Id.* at 1549. The parties agree that the first element has been satisfied, but disagree on the other three. In addition, the parties dispute the applicable law (federal versus state), whether the Tippins' blanket reservation of rights clause avoids the imposition of claim preclusion, and whether Janice's lack of knowledge of her claims allows her to avoid claim preclusion. Each of these issues will be discussed below.

## 2. The Claim Preclusive Effect of a Federal Judgment is Determined by Federal Law.

█ The leading case on this issue in this circuit is *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499 (11th Cir.1984) *cert. denied* 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985) which cites many cases that hold that federal common law controls this issue because the judgment being enforced was rendered by a federal court. *Id.* at 1503. The Eleventh Circuit restated this holding in *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.,* 880 F.2d 1291 (11th Cir.

1989) noting that "one of the strongest policies a court can have is that of determining the scope of its own judgments [citation omitted]." *Id.* at 1293 n. 2 (quoting *Kern v. Hettinger,* 303 F.2d 333, 340 (2nd Cir.1962)); *see also United States v. Barnette,* 10 F.3d 1553, 1561 (11th Cir.1994); *Citibank, N.A. v. Data Lease Fin. Corp.,* 904 F.2d 1498, 1501 (11th Cir.1990); *Hart v. Yamaha–Parts Distribs., Inc.,* 787 F.2d 1468, 1470 (11th Cir. 1986); *In re Downs,* 205 B.R. 93, 95 (Bankr. N.D.Ohio 1996); *In re McCoy,* 163 B.R. 206, 210 (Bankr.M.D.Fla.1994); *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc. (In re Pyramid Energy, Ltd.),* 160 B.R. 586, 590 (Bankr. S.D.Ill.1993); RESTATEMENT (SECOND) OF JUDGMENTS, § 82 (1982) ("federal law determines the effect under the rules of res judicata of a judgment of a federal court."); *Cf., Angus v. Wald (In re Wald),* 208 B.R. 516 (Bankr.N.D.Ala.1997). The Court is aware that there are several Eleventh Circuit cases that hold to the contrary, but each of these decisions is expressly based on a misstatement in one case.[8] Nonetheless, the great weight of authority hold that the law of claim preclusion is the law of the court issuing the judgment. This must be the law otherwise, the same bankruptcy decision would have a different effect in bankruptcy court in Alabama from what it would have in, say, in a bankruptcy court in Florida. Such a difference would violate the Constitution's mandate for "uniform Laws on the subject of bankruptcies throughout the United States." ARTICLE I, § 8. The claim preclusive effect of federal law controls the claim preclusive effect of a federal judgment. In the instant case, this Court is construing the effect of its own federal judgment and decree. There-

---

8. The Eleventh Circuit's leading case is *Precision Air* which cites many cases that hold that federal common law is the claim preclusion law to be applied whenever a federal judgment is being construed, regardless of the court construing the judgment. Earlier cases with the same holding included *In re Merrill,* 594 F.2d 1064 (5th Cir. 1979); and *Dorey v. Dorey,* 609 F.2d 1128 (5th Cir.1980). Then, in *McDonald v. Hillsborough County School Bd.,* 821 F.2d 1563, 1565 (11th Cir.1987) the Eleventh Circuit stated "A federal court must apply the law of the state in which it sits with respect to the doctrine of res judicata." No authority for this proposition was cited. That

statement was correct as applied to that case because the judgment being construed was a state court judgment. The statement itself was wrong. The statement itself was an incomplete statement of the law. In a subsequent opinion, without any analysis, the court cites the misstatement when construing a prior federal judgment. *See, e.g., Wesch v. Folsom,* 6 F.3d 1465 (11th Cir.1993). In each of these cases, however, there was no apparent difference between federal and state law on this issue, so the comments were dicta. Moreover, this sentence is at odds with the great weight of authority from the Eleventh Circuit and is not the law.

fore, federal law controls the claim preclusion issue.

### 3. Final Judgments on the Merits.

■■■ The first contested issue of claim preclusion is whether there was a final judgment on the merits for claim preclusion to attach. The Tippins contend that the Confirmation Orders entered in their chapter 13 cases were not final judgments, and thus cannot serve as the basis for enjoining the state court litigation under the doctrine of claim preclusion. Contrary to the Tippins contention, precedent clearly establishes that a confirmation order of a chapter 13 plan is a final judgment with a claim preclusion effect. *Justice Oaks*, 898 F.2d at 1550; *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 553 (5th Cir.1985); *Marlow v. Sweet Antiques (In re Marlow)*, 216 B.R. 975 (Bankr. N.D.Ala.1998); *In re Duke*, 153 B.R. 913, 917 (Bankr.N.D.Ala.1993).

Section 1327(a) of the Bankruptcy Code states "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Since the Chapter 13 confirmation order is binding under this provision, it is a final judgment which has claim preclusive effect. *See Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1550 (11th Cir.1990); *In re Duke*, 153 B.R. 913 (Bankr.N.D.Ala.1993). The only exception to this finality is a due process violation where a secured creditor has received inadequate notice that it's claim is subject to modification in bankruptcy. *See Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639, 642 (5th Cir.1992); *Marlow*, 216 B.R. at 975.

The Eleventh Circuit held in *Justice Oaks* that "a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits." *Justice Oaks*, 898 F.2d at 1550. The court concluded that guarantors of a chapter 11 debtor waived their right to object to a creditor's proof of claim by failing to object prior to confirmation of the plan. *Id.* at 1553. The debtor's causes of action were barred by claim preclusion, even though they were not pursued prior to confirmation. *Id.* In reaching its conclusion, the court relied upon the Fifth Circuit case, *Simmons*, which held that "under §§ 506(a) and 1325(a)(5), a proof of secured claim must be acted upon—that is, allowed or disallowed— before confirmation of the plan or the claim must be deemed allowed for purposes of the plan." *Simmons*, 765 F.2d at 553. *See also* 11 U.S.C. § 502(a). *Simmons* is a chapter 13 case while *Justice Oaks* is a chapter 11 case. The Eleventh Circuit expressly noted this distinction and found that the reasoning applied in chapter 13 plans is applicable to chapter 11 plans. *Justice Oaks*, 898 F.2d. at 1553. Other appellate decisions have held that a confirmation order bars post-confirmation litigation of a debtor's state law prepetition claims where the creditor's proof of claim was allowed.[9] *See, e.g., Bank of Lafay-*

---

9. This Court is aware of a decision by another judge of this district on this issue that is at odds with this conclusion and this Court's holding in *Duke*. In *Duke*, this Court held that a confirmation order in a chapter 13 plan that allows a particular claim bars relitigation of that claim. *In re Duke*, 153 B.R. 913, 918 (Bankr.N.D.Ala. 1993). In *Royal v. Daihatsu (In re Royal)*, 197 B.R. 341 (Bankr.N.D.Ala.1996), the court briefly speculated on the confirmation order's binding effect on claims. In a footnote the court stated:

"... the argument goes, the claims asserted in the Complaint are barred by the confirmation order and this court should retain jurisdiction in order to enforce the binding effects of its order. This argument fails to take into account the existence of 11 U.S.C. § 502(j) which provides that an order allowing or disallowing a claim may be reconsidered according to the

equities of the case.... Therefore, it is questionable what preclusive effect a confirmation order may have on subsequent challenges to claims when that confirmation order itself is still subject to being amended."

*Id.* at 349 n. 14. This Court agrees that § 502(j) allows for reconsideration of claims even after a plan has been confirmed. We are troubled by the broad language in *Royal* regarding preclusion. While this Court continues to vigorously emphasize the binding nature of the confirmation order on any matter which was raised or could have been raised as part of the confirmation process, we note the facts of the two cases are different. In *Duke* and *Roper* the claims allowance process was completed at the time of confirmation and the confirmation orders determined that the claims were allowed. In *Royal*, confirmation preceded the bar date of timely

*ette v. Baudoin (In re Baudoin),* 981 F.2d 736 (5th Cir.1993); *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374 (9th Cir. BAP 1993); *Eubanks v. F.D.I.C. (In re Eubanks),* 977 F.2d 166 (5th Cir.1992);

filing claims and therefore could not resolve claims and objections. The difference in the confirmation order and the timing of confirmation vis a vis the claims allowance process may partially resolve the apparent conflict in the cases. See *Marlow v. Sweet Antiques (In re Marlow),* 216 B.R. 975 (Bankr.N.D.Ala.1998) and *In re Bernard,* 189 B.R. 1017 (Bankr.N.D.Ga.1996) for good reviews of finality when claims allowance continues beyond confirmation.

Where a party seeks to alter, amend, or avoid the confirmation order, there are six avenues that may be pursued; however, each are subject to their own restrictions, and all should be strictly and narrowly construed. *See Duke,* 153 B.R. at 918. First, the confirmation order, like any other final order, may be appealed. FED. R.BANKR.P. 8001(a). The aggrieved party may also attempt to have the debtor's confirmation revoked; however, this relief is only available where the confirmation order was "procured by fraud." 11 U.S.C. § 1330(a). Such a request must be brought no later than 180 days following confirmation, *id.,* and may only be brought by adversary proceeding. FED R.BANKR.P. 7001(5). The 180–day limitation is absolute. *See* FED. R.BANKR.P. 9006(b), 9024. A party may also move the Court pursuant to either Rule 9023 (to alter or amend the order within ten days of its entry) or Rule 9024 (for relief from the order outside of ten days). *See* FED.R.BANKR.P. 9023, 9024.

A creditor seeking to have a claim reconsidered post-confirmation may move the bankruptcy court to modify the plan pursuant to 11 U.S.C. § 1329(a). Before the Court will grant such a motion, however, the movant must establish that there has been a material change in circumstances since confirmation and that the modification is made in good faith. *See Duke,* 153 B.R. at 918. Furthermore, the modification must comply with many of the strictures required for confirmation, except for the cram-down provisions in § 1325(b). *See* 11 U.S.C. § 1329(b).

To the extent that this Court's previous decision in *Duke* held that a party may only seek to have a claim reconsidered post-confirmation through modification of the plan pursuant to 11 U.S.C. § 1329(a), such an absolute standard will no longer be followed. The Eleventh Circuit in *International Yacht and Tennis, Inc. v. Wasserman (In re International Yacht and Tennis, Inc.),* 922 F.2d 659 (11th Cir.1991), held that a court can reconsider claims until the case is closed. *Id.* at 662. Congress has expressly provided in § 502(j) that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). There is no time limit on when a Rule 3007 motion to reconsider may be made. *See* FED.R.BANKR.P. 9024.

Several courts in this circuit have noted the "subtle tension between the finality conferred by section 1327(a) and the court's power to reconsider allowance under section 502(j)." *In re Bernard,* 189 B.R. 1017, 1021 n. 4 (Bankr. N.D.Ga.1996); *In re Clark,* 172 B.R. 701, 704 n. 4 (Bankr.S.D.Ga.1994). Similar to the five remedies discussed above, § 502(j) is a very narrow window in the brick wall of finality raised by the confirmation order against claims litigation. Before the merits of a claim may be addressed by the Court, the movant must first establish "cause." *Clark,* 172 B.R. at 705. For a movant who had adequate notice and an opportunity to litigate his claim prior to or at confirmation, "cause" will be an extremely difficult hurdle to surpass. Such a failure to object should generally "cement the presumption of that claim's validity." *In re Bernard,* 189 B.R. 1017, 1019 (Bankr. N.D.Ga.1996). Unless specifically reserved in the confirmation order, a § 502 objection to claim is not available post-confirmation. *Id.* at 1020; *Marlow,* 216 B.R. at 975; *Duke,* 153 B.R. at 913.

The fact that the motion may be made at any time during the pendency of the case, no matter how far removed from confirmation, does not aid the movant. The longer the time between confirmation and the filing of the Rule 3007 motion, the greater the prejudice to other parties in interest; therefore, the less likely the Court will be to grant the motion. *Bernard,* 189 B.R. at 1022 (enumerating six factors with which to analyze "cause," including prejudice and the length of the delay). In making its decision, the Court has substantial discretion. *Id.* However, this discretion does not give it leave to ignore the structure and integrity of the remainder of the Code and its emphasis on the finality of confirmation.

The structure of the Bankruptcy Code gives strong support to placing such a heavy burden on the movant seeking reconsideration of a claim pursuant to § 502(j). Section 1327(a) states that a confirmation order is binding upon all parties in interest. It sets the relationship between the parties and helps determine all claims in relation to the limited disposable income of the debtor. Section 502 governs the claims allowance process. It provides that claims must be timely filed to be allowed, and refers to the Federal Rules of Bankruptcy Procedure, as set by the United States Supreme Court, for those deadlines. *See* 11 U.S.C. § 502(b)(9). Such deadlines are necessary to an efficient administration and confirmation process. That section also provides the method by which a claim may be reconsidered. *See id.* § 502(j). Because the debtor has limited disposable income, and the confirmation order fixes the rights and relationships between the parties, reconsideration can be prejudicial to other creditors.

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474 (6th Cir.1992); *Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869 (2nd Cir.1991); *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138 (5th. Cir.1990). Based upon the case law cited above, the Tippins' confirmed chapter 13 plans have all the preclusive effects of a final judgment for claim preclusion purposes.

In addition, the Tippins argue that the Eleventh Circuit's decision in *In re Seidler*, 44 F.3d 945 (11th Cir.1995) limits *Justice Oaks*. This argument provides the Tippins with no help. *Seidler* holds that where there is an appeal taken prior to confirmation, the later order confirming the plan (while the appeal is pending) cannot resolve the issues that are then on appeal. *Id.* at 948. In *Seidler*, the sequence of events is key because the appeal occurred before the confirmation order. As a result, the confirmation order was not binding with respect to those issues that were then pending on appeal. *Seidler* is simply different from the instant case and inapplicable.

### 4. The Tippins' Blanket Reservation of Rights Clause Does not Save Their Claims.

The Tippins argue that even if a confirmation order would ordinarily bar a later asserted cause of action, it does not do so in the instant case because in each of their plans, they expressly reserved all of their causes of action. This Court finds, however, that it would not comport with due process for the blanket reservation of rights clauses to preserve the Tippins causes of action and to deprive their creditors of the right to rely upon the finality of the orders confirming the plans. Further, as set out in *Duke*, the relationships of the debtor and creditor become fixed upon the confirmation of the plan. *In re Duke*, 153 B.R. 913, 916 (Bankr. N.D.Ala.1993). The vague blanket reservation of rights clause is insufficient notice to creditors to satisfy due process.

The three circuits that have spoken on this issue have each held that a blanket reservation of rights clause is ineffective. The Seventh Circuit recently addressed the issue in the case *D & K Properties Crystal Lake v.*

*Mutual Life Ins. Co. of New York*, 112 F.3d 257 (7th Cir.1997). After confirmation of its chapter 11 plan, the debtor in *D & K* filed a state court action against a creditor whose claim was paid in the bankruptcy proceeding. The confirmed plan contained a blanket reservation of rights clause. In a lengthy and well-reasoned opinion, the Seventh Circuit held:

> The problem in *Micro–Time*, as in this case, was not that the reservation was not in writing, but that the claim sought to be reserved was not identified in the reservation.... *A blanket reservation that seeks to reserve all causes of action reserves nothing.* To hold otherwise would eviscerate the finality of a bankruptcy plan containing such a reservation, a result at odds with the very purpose of a confirmed bankruptcy plan.... To avoid res judicata the reservation of a cause of action must both be express, as in writing, and express, as in specifically identified. *D & K* failed to identify any claim it was reserving and its cause of action is thus barred.

*D & K*, 112 F.3d at 261 (emphasis added). The court in *D & K* relied upon the Sixth Circuit case, *Micro–Time* which held that in order to avoid the defense of claim preclusion, the claim must have been expressly reserved, otherwise "any cause of action that may have existed was extinguished upon the plan being confirmed...." *Micro–Time Management Sys., Inc. v. Allard & Fish, P.C. (In re Micro–Time Management Sys., Inc.)*, 983 F.2d 1067 (Table), 1993 WL 7524 *4–*6 (6th Cir.1993) (unpublished disposition) *cert. denied*, 510 U.S. 906, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993).

The Ninth Circuit Bankruptcy Appellate Panel reached a similar conclusion in *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698 (9th Cir. BAP 1996) providing:

> [I]f the debtor fails to mention the cause of action in either his schedules, disclosure statement, or plan, then he will be precluded from asserting it postconfirmation. *Heritage Hotel*, 160 B.R. at 375. Even a blanket reservation by the debtor reserving "all causes of action which the debtor may choose to institute" has been held insufficient to prevent the application of

res judicata to a specific action. (citation omitted)

*Kelley,* 199 B.R. at 704. *Cf., In re Marlow,* 216 B.R. 975 (Bankr.N.D.Ala.1998).

The instant case, the Tippins did not disclose any claims against AmGen and Merit in their schedules prior to confirmation of their chapter 13 plans. In both the Tippins' cases, the confirmed plans did not mention any specific claim or cause of action against Am-Gen and Merit, but instead provided for the full payment of their debt. The Court finds that the language in the Tippins' plans is merely a blanket reservation of rights which is insufficient to prevent the application of claim preclusion.

**5. Identity of Claims: The Confirmation Orders Issued in the Tippins' Chapter 13 Cases Precludes All Claims Which Were or Could Have Been Raised.**

The Tippins incorrectly contend that because their particular state court claims were not raised at confirmation, no identity of claims exist, and therefore the State court action is not barred by claim preclusion. It is well settled that claim preclusion applies not only to the claims advanced in a prior case, but to all claims arising out of the same nucleus of operative facts. *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993); *Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869, 873 (2d Cir.1991) (the doctrine of claim preclusion bars relitigation not just of those claims which were brought in a prior proceeding, but of "any other admissible matter" which could have been brought, but was not). Generally, claims arise out of the same cause of action when they arise out of the same transaction or series of transactions or out of the same core of operative facts. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1551 (11th Cir.) *cert. denied* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). The same cause of action includes, for claim preclusion purposes, all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction.

An order confirming a chapter 13 plan is claim preclusive as to all justiciable issues which were or could have been decided before confirmation. *In re Patterson,* 107 B.R. 576, 578 (Bankr.S.D.Ohio 1989). A court cannot subsequently address arguments that would or could have been made at the time of confirmation. *Roper v. American Health & Fire Ins. Co. (In re Roper),* 203 B.R. 326, 334 (Bankr.N.D.Ala.1996).

The claims made in the Tippins' state court complaint involve the same pre-petition loan transactions which provide the basis of Am-Gen's proof of claims. The Tippins could and should have raised objections to AmGen's proof of claims prior to confirmation, but failed to do so. In the present case, the Tippins listed AmGen as a creditor in their chapter 13 cases. AmGen properly filed proofs of claims in the Tippins' bankruptcy cases. No objection to AmGen's claims were filed. The Tippins chapter 13 plans disclosed and specifically addressed AmGen's proofs of claim. The plans did not mention any claim or cause of action against AmGen. The confirmation orders expressly allowed AmGen's claims and the Tippins' chapter 13 plans paid the claims of AmGen direct. The facts clearly show that the Tippins had full opportunity to contest AmGen's claims. Because the Tippins' claims should have been brought in their bankruptcy cases, claim preclusion prevents them from being raised now.

The Tippins rely on two bankruptcy cases in the Seventh Circuit, *Marshall v. Security St. Bank of Hamilton (In re Marshall),* 121 B.R. 814 (Bankr.C.D.Ill.1990) *aff'd* 132 B.R. 904 (C.D.Ill.1991) *aff'd* 970 F.2d 383 (7th Cir.1992) and *Elliott v. ITT Corp.,* 150 B.R. 36 (N.D.Ill.1992). The cases are not applicable to the issues at hand. In *Marshall,* chapter 13 debtors brought an adversary proceeding against a bank under the Truth in Lending Act ("TILA") alleging that the bank took a security interest in the vehicle without disclosing it twelve days after confirmation of their chapter 13 plan. In defense, the bank claimed that the debtors' claim was merged into the confirmed plan. Relying on the Seventh Circuit case, *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), the court held that the debtors' TILA claim was not a compulsory counterclaim that the debtors

were required to bring prior to confirmation in order to avoid the bar of claim preclusion.[10] *Marshall,* 121 B.R. at 819. Further, the court in *Elliott* alluded to *In re Marshall* and held that a debtor's confirmed chapter 13 plan did not bar the debt or under claim preclusion from bringing a consumer class action under the TILA. *Elliott,* 150 B.R. at 40.

Unlike the Seventh Circuit, both the Eleventh Circuit and Alabama state courts have consistently held that in a collection suit, a counterclaim for violation of TILA is compulsory and a party defendant who fails to raise the counterclaim is barred by the doctrine of claim preclusion from raising that claim in a subsequent action. *See e.g. Heaven v. Trust Co. Bank,* 118 F.3d 735, 738 (11th Cir.1997) (holding that TILA counterclaims are compulsory counterclaims); *Plant v. Blazer Fin. Servs., Inc. of Georgia,* 598 F.2d 1357, 1363 (5th Cir.1979) (holding that TILA counterclaims are compulsory); *Ex Parte Fletcher,* 429 So.2d 1041, 1044 (Ala.1982) (in a collection suit a TILA counterclaim is compulsory); *Brooks v. Peoples Nat'l Bank of Huntsville,* 414 So.2d 917, 920 (Ala.1982) (in general, a failure to assert a compulsory counterclaim bars assertion of that claim in another action).

This Court also considers the argument that the Tippins' claims are barred under the compulsory counterclaim rule. The Tippins argue that the compulsory counterclaim rule does not bar their claims and relies upon Alabama law in reaching that conclusion.[11] However, as stated earlier, federal law and not state law governs in an action determining the effect of a federal judgment. Fed. R.Civ.P. 13 provides:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

In the Eleventh Circuit, courts use the "logical relationship" test to determine whether a counter claim is compulsory. *Republic Health Corp. v. Lifemark Hosps. of Florida, Inc.,* 755 F.2d 1453, 1455 (11th Cir.1985). This test inquires into whether "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* (quoting *Plant,* 598 F.2d at 1361). Here it is clear that the same operative facts serve as a basis of both claims and there does not seem to be any disagreement that the Tippins' claims are counterclaims.

The Code however does not provide for the compulsory counterclaim rule to apply to contest of claims. Rule 7013 provides that the rule applies to adversary proceedings. An objection to a claim is a contested matter and thus under Rule 9014 certain rules pertaining to adversary proceedings apply. Rule 7013 is not one of them. This Court agrees with AmGen that the procedural com-

---

**10.** In reaching its conclusion, the court noted that the Seventh Circuit Court of Appeals in the case of *Asset Allocation & Mgt. Co. v. Western Employers Ins. Co.,* 892 F.2d 566 (7th Cir.1989), questioned the decision in *Valencia,* stating it may need to be reviewed in the future. Until it is reviewed, the court concluded that it was bound by the holding in *Valencia. Marshall,* 121 B.R. at 819–20.

**11.** Under Alabama law Janice Tippins claim would not be barred under the compulsory counterclaim rule but William and Kathy's would. In *Sho–Me Motor Lodges, Inc. v. Jehle–Slauson Constr. Co.,* 466 So.2d 83 (Ala.1985), the Alabama supreme court stated that the compulsory counterclaim rule applies only if the party had knowledge of its claim. *Id.* at 90. Janice did not become aware of her claim until approximately one year after her plan was confirmed. William and Kathy were aware of their claim about one month prior to their plan being confirmed.

pulsory counterclaim, Rule 7013, does not apply to this situation.

As the Tippins allege in their counterclaim to this adversary proceeding, one of the main purposes of bankruptcy is to provide one forum for resolution of all disputes involving the debtor. Bankruptcy exists not only for debtors, but also for the benefit of creditors; its gives the creditors a single forum which debts can be determined and collected in whole or part. Courts have observed:

> [A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 et seq., demonstrate Congress's intent to create a whole system under federal law which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be under taken in the management of the bankruptcy process.

*In re Si Yeon Park, Ltd.,* 198 B.R. 956, (Bankr.C.D.Cal.1996) (citing *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 914 (9th Cir.1996)). The confirmed plan encompasses the entire debtor-creditor relationship. *Sure–Snap,* 948 F.2d at 874–75. Allowing the Tippins to proceed with the state court action after they had remedies available during the confirmation process would threaten the uniformity of the bankruptcy law. The Tippins' claims against AmGen should have been brought in bankruptcy, and not in a separate action in state court. Claim preclusion prevents the Tippins' claims from being raised now.

Thus, there is an identity of claims sufficient to bar the Tippins from asserting their claims in later post-bankruptcy proceeding against AmGen and Merit.

### 6. Janice Tippins Lack of Knowledge of her Claims against AmGen and Merit is Irrelevant for Claim Preclusion Purposes Under Federal Law.

The Tippins further contend that their state court claims are not barred by the doctrine of claim preclusion because they did not have knowledge of their claims when their chapter 13 plans were confirmed. The Tippins' contention fails both legally and to some extent factually. The Tippins admit that they knew of their claims by July of 1996. Janice Tippins' plan was confirmed on September 6, 1995, and William and Kathy Tippins' plan was confirmed on August 9, 1996. Therefore, the Tippins' lack of knowledge argument only applies to Janice Tippins.

The Court has already concluded that federal law, not state law, controls the claim preclusive effect of a federal judgment. Federal and Alabama law appear largely the same on the doctrine of claim preclusion, but they differ on this one point. Federal law holds that a plaintiff's lack of knowledge of the potential claim does not defeat the imposition of the claim preclusion bar while Alabama state law appears to hold to the contrary.

■ As federal law holds that "for purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, it is the existence of the present claim, not the party's awareness of it, that controls." *First Union Commercial Corp. v. Nelson, Mullins, Riley, and Scarborough (In re Varat Enter., Inc.),* 81 F.3d 1310,1316 (4th Cir.1996) (citing *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986)); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 873 (5th Cir. 1984). The Alabama decisions that appear to be contrary are *Sho–Me Motor Lodges, Inc. v. Jehle–Slauson, Constr. Co.,* 466 So.2d 83 (Ala.1985); *Chavers v. Nat'l. Sec. Fire and Cas., Co.,* 456 So.2d 293 (Ala.1984). Because federal law applies, Janice Tippins' lack of knowledge is no bar to the imposition of claim preclusion.

### 7. Claim Preclusion Bars the Tippins' Post Chapter 13 Confirmation Assertion of their Claims Against the Creditor, AmGen.

Based upon the above analysis, a debtor's claims against a creditor are barred by the

doctrine of claim preclusion where an order confirming a chapter 13 plan allows claims arising from the same facts or transactions. This result is so, even though the debtor purported to reserve in blanket fashion, all causes of action against the creditor and despite the fact that the debtor may have been unaware of its claims against the creditor at the time the confirmation order was entered.

### 8. Claim Preclusion Does Not Bar the Tippins' Assertion of the Claims Against the Non–Creditor, Merit.

 The Tippins argue that even if their claims against the creditor AmGen are barred, the doctrine of claim preclusion does not bar their claims against Merit because Merit was not listed as a creditor in their schedules and did not file a proof of claim. AmGen counters by arguing that it is undisputed that the insurance premiums due from the Tippins to Merit were included in the proofs of claim filed by AmGen and that the premiums are the basis for the underlying lawsuit.

Merit argues in favor of the doctrine of virtual representation, noting that, "one who participates in a . . . confirmation proceeding becomes a party to that proceeding even if never formally named as such." *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1551 (11th Cir.) *cert. denied* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). AmGen argues that it is also black letter law that claim preclusion applies not only to parties, but also to those in privity with them. In so doing, AmGen relies on the doctrine of "virtual representation." *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir.1988); *Matter of L & S Indus., Inc.*, 989 F.2d 929, 933 (7th Cir.1993); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 (5th Cir.1984). The contracts filed as evidence show that Merit and AmGen are in privity with each other in this matter. Indeed, AmGen's allowed proofs of claim, include the entire cost of the Tippins insurance premiums, which cost is the basis of the Tippins' cause of action against Merit.

The cases that have applied the doctrine of virtual representation are cases that have a much closer identity of the parties than exist in this case. Judge DeMent in the *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F.Supp. 1424 (M.D.Ala.1996), addresses the application of the claim preclusion doctrine to co-defendants and held that the non-creditor defendant was not entitled to the same benefits of claim preclusion that the creditor defendant enjoyed. *Id.* at 1429. In this case, Merit is alleged to be liable because of the insurance premiums charged are a violation of Alabama's Mini–Code, ALA.CODE § 5–19–1 *et seq.*, and because of fraud. It very well may be that under the facts the Tippins will not be able to prove their case against Merit. Nonetheless, Merit is not entitled to have summary judgment entered in its favor under the doctrine of claim preclusion because AmGen and Merit are too unrelated for virtual representation to apply.

### 9. Summary on Claim Preclusion.

The doctrine of claim preclusion bars all of the Tippins' claims in the instant case against AmGen: it bars none of the Tippins' claims against Merit.

## V. THE DOCTRINE OF JUDICIAL ESTOPPEL.

 Merit argues that even if its assertion of claim preclusion fails, it is nonetheless entitled to summary judgment on the Tippins' claims based on the doctrine of judicial estoppel. Because this case involves federal issues, this court can look to common law, state law and/or the doctrine of judicial estoppel itself in establishing the necessary formulation. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir.1988). The analysis of the judicial estoppel set out by the Supreme Court of Alabama in some recent bankruptcy cases guides this Court in the application of judicial estoppel rule.

Courts in Alabama have repeatedly held that a plaintiff is judicially estopped from bringing a cause of action in state court that was not timely listed in his bankruptcy proceedings as at least a contingent asset. *Bertrand v. Handley*, 646 So.2d 16, 18 (Ala. 1994); *Luna v. Dominion Bank of Middle*

*Tennessee, Inc.,* 631 So.2d 917 (Ala.1993). In each of these cases, the court granted a non-creditor defendant a summary judgment based upon the debtor-plaintiff's previous failure to list the cause of action as an asset in the bankruptcy schedules. The same law bars the Tippins' causes of action. To hold otherwise would be to sanction a process whereby a bankruptcy debtor can play "fast and loose with the courts." *Payless Whole-sale Distribs., Inc. v. Alberto Culver (P.R.), Inc.,* 989 F.2d 570, 571 (1st Cir.1993), (quoting *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987)) *cert. denied,* 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993); *cf., Helfand v. Gerson,* 105 F.3d 530, 534 (9th Cir.1997) (judicial estoppel seeks to prevent deliberate manipulation of the courts); *McKinnon v. Blue Cross & Blue Shield of Alabama,* 935 F.2d 1187, 1192 (11th Cir.1991) (judicial estoppel applied to calculated assertion of divergent sworn positions); *American Nat'l Bank of Jacksonville v. F.D.I.C.,* 710 F.2d 1528, 1536 (11th Cir.1983) (judicial estoppel is applied to calculated assertion of divergent sworn positions).

Applying these cases to the instant case, it becomes apparent that William and Kathy Tippins' claim against Merit is barred by this rule. They were aware of their causes of action against Merit when their plan was confirmed, yet chose not to list them in their schedules or to inform their creditors, the chapter 13 trustee, or the Court. Their belated attempt to amend their schedules is meaningless for judicial estoppel purposes since it occurred after their chapter 13 plan was confirmed. *See In re Duke,* 153 B.R. 913, 916–17 (Bankr.N.D.Ala.1993). Moreover, the late post-confirmation amendments are prejudicial to creditors who relied on the prior schedules in accepting the Tippins' plans that provided less than full payment of their claims. *See Doan v. Hudgins (Matter of Doan),* 672 F.2d 831, 833 (11th Cir.1982) (a court may deny leave to amend schedules if there is a showing of bad faith or prejudice to the creditors). Therefore, William and Kathy Tippins' claim against Merit is barred by the doctrine of judicial estoppel.

However, applying the facts most favorable to Janice Tippins, it is not clear that she was aware of her claim against Merit until after her plan had been confirmed. Because of her apparent lack of knowledge, this Court finds that her claim against Merit is not barred by the doctrine of judicial estoppel.

## VI. THE BANKRUPTCY COURT'S § 105 POWER TO ENJOIN THE TIPPINS FROM PROSECUTING THEIR STATE COURT PROCEEDINGS.

The Court has concluded that the prior bankruptcy proceedings in this Court bar the Tippins from pursuing their claims against AmGen and bar William and Kathy Tippins from pursuing their claims against Merit. Based on that conclusion, the Court now turns its attention to the appropriate remedy. The remedy sought by AmGen and Merit is an injunction under 11 U.S.C. § 105 that would prohibit further litigation of these barred claims. Not surprisingly, the Tippins raise the Anti–Injunction Act as a defense to the remedy.

The Anti–Injunction Act, codified at 28 U.S.C. § 2283, generally prohibits federal courts from enjoining state court proceedings except in three situations. Section 2283 states:

A court of the United States may not grant an injunction to stay proceedings in a State court *except* as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (emphasis added). It has been long recognized, however, that bankruptcy courts have the equitable power to enjoin state court proceedings to protect and enforce its decrees. *In re All American of Ashburn, Inc.,* 805 F.2d 1515 (11th Cir.1986). Thus, the Anti–Injunction Act is read in conjunction with 11 U.S.C. § 105(a) of the Bankruptcy Code which provides a source of authority for a bankruptcy court to enjoin a state court action. This section provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest

shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Injunctions issued under § 105(a) satisfy two of the exceptions to the Anti–Injunction Act. First, the injunction would be expressly authorized by an act of Congress. 11 U.S.C. § 105(a); *E.g. In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir.1991); *In re Joint Eastern & Southern Dists. Asbestos Litigation,* 120 B.R. 648, 658 (Bankr. S.D.N.Y.1990). Second, the injunction would serve to protect and effectuate this Court's judgment confirming the Tippins' plans and the related judicial proceedings. *Id.; Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 873 (5th Cir.1984); *Jacksonville Blow Pipe Co. v. Reconstruction Fin. Corp.,* 244 F.2d 394, 397 (5th Cir.1957)

▇▇▇▇ The relitigation exception to the Anti–Injunction Act is essentially a claim preclusion concept designed to prevent issues that have or should have been tried in federal court from being relitigated in state court. *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993). Implicit in § 105 is the ability of a bankruptcy court to stay a state court proceeding when the principles of claim preclusion or collateral estoppel are applicable. The Court, having found that the Confirmation Orders are entitled to claim preclusion, enjoins the Tippins' state court action. The Court finds that the injunction is necessary to protect and effectuate its orders confirming the Tippins' plans.

Numerous courts have held that where Congress authorizes courts to issue injunctions with respect to a general statutory topic, no irreparable harm need be shown for the injunction to issue. This general rule has been applied to numerous federal statutory subjects, such as the Civil Aeronautics Act, the Commodity Exchange Act, the Interstate Commerce Act, the Labor Management Relations Act, the Postal Act, the Securities Act, and many more. *See generally Atchison, Topeka & Santa Fe Ry. Co. v. Lennen,* 640 F.2d 255, 259–60 (10th Cir.1981) and cases cited therein. Similarly, this same principle—that no equitable grounds or irreparable harm need be shown for a relitigation injunction to issue—has been expressly held to apply to § 105 actions. "Since injunctions in bankruptcy are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown." *Balanoff v. Glazier (In re Steffan),* 97 B.R. 741, 746 (Bankr.N.D.N.Y. 1989) (quoting *Garrity v. Leffler (In re Neuman),* 71 B.R. 567, 571 (S.D.N.Y.1987)); *LTV Steel Co. v. Board of Education of Cleveland City Sch. Dist. (In re Chateaugay Corp., Reomar, Inc.),* 93 B.R. 26, 29 (S.D.N.Y.1988). Thus, no equitable grounds for issuing the injunction are required in this proceeding.

The reason for this "no equitable grounds needed" rule is apparent. One of the main purposes of the Bankruptcy Code is to provide one forum for resolving all disputes involving the debtor. Bankruptcy exists not only for debtors, but also for the benefit of creditors; its gives the creditors a single forum which debts can be determined and collected in whole, in part, or not at all. As the Seventh Circuit wrote in *Matter of American Reserve Corp.,* 840 F.2d 487 (7th Cir. 1988):

> The principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlement of all concerned. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). . . .

*Id.* at 489; *cf., MSR Exploration, Ltd. v. Meridian Oil Inc.,* 74 F.3d 910, 914 (9th Cir.1996). Bankruptcy courts have routinely enjoined creditors from prosecuting post-discharge actions in state court on grounds that they violate the discharge order in chapter 7 or the confirmation order in chapter 13. The debtor is not required to show irreparable harm to get the injunction. True, the debtor could raise the bankruptcy defense in state court and presumably the state court would reach the right result. However, the law clearly provides debtors relief from the bankruptcy court rather than the state court. If the availability of relief in the state court forum were the test, no relitigation injunction would ever be issued. What is true for the debtor is true for creditor. When the credi-

tor is sued in another forum, it need not show irreparable harm to obtain a relitigation injunction. The creditor is entitled to the unified bankruptcy forum just as much as the debtor.

In the instant case, the Tippins claims against AmGen should have been brought in bankruptcy court prior to confirmation and not in a separate action in state court after the confirmation. The Tippins had their day in court and should not be allowed to take more than "one bite of the apple." *Sure–Snap*, 948 F.2d at 874–75. The Tippins should not be allowed to proceed with the post-confirmation state court action when those remedies were available during the confirmation process and they did not avail themselves of them. Accordingly, the Court finds that the Tippins' should be enjoined from prosecuting their claims in state court.

## VII. CONCLUSION.

The Court finds that there is no genuine issue of material fact and that AmGen and Merit have made a showing of entitlement to a summary judgment to the following extent:

William and Kathy Tippins knew of their claims against AmGen and Merit when their chapter 13 plan was confirmed and AmGen's proof of claim was allowed routinely by the confirmation order. They belatedly listed their causes of action as exempt, thereby giving them standing to pursue their claims. Nonetheless, their claim against AmGen is barred by claim preclusion and their claims against AmGen and Merit are barred by judicial estoppel.

Janice Tippins did not know (at least on a summary judgment standard) of her claims against AmGen and Merit when her plan was confirmed and AmGen's proof of claim was allowed routinely by the confirmation order. She belatedly listed her causes of action as exempt, thereby giving her standing to pursue her claims. Nonetheless, her claim against AmGen is barred by claim preclusion. However, her claim against Merit is not barred by claim preclusion or by judicial estoppel.

Thus, AmGen is entitled to a § 105 injunction barring all of the Tippins from prosecuting all of their claims against AmGen. Merit is entitled to a § 105 injunction barring William and Kathy Tippins from prosecuting all of their claims against Merit. An order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.