This is an appeal by Sho-Me Motor Lodges, Inc., of Alabama (Sho-Me), d/b/a Mobile Howard Johnson's Motor Lodge (Mobile Howard Johnson's), from summary judgments entered in favor of Jehle-Slauson Construction Company (Jehle-Slauson) *Page 85 
and Southern Roof Deck Applicators, Inc. (Southern Roof).
This case actually involves three separate actions, although only the last of the three is presently before us on appeal. The following facts are pertinent to all three actions:
On or about September 17, 1979, Sho-Me, the owner of the Mobile Howard Johnsons's, entered into a contract with Jehle-Slauson, as prime contractor, for the repair of damage caused by Hurricane Frederic. Jehle-Slauson then subcontracted with Southern Roof and under the terms of the contract Southern Roof agreed to complete the sheetrock work. On February 20, 1980, Sho-Me cancelled the contracts of both Jehle-Slauson and Southern Roof.
Before elaborating on the nature and outcome of the three actions involved, we will at this point briefly summarize those actions:
 Action No. 1 (CV-80-1491)
June 30, 1980 Jehle-Slauson filed suit against Sho-Me.
March 27, 1981 Dismissed with prejudice, on stipulation of the parties.
 Action No. 2 (CV-80-1652)
July 18, 1980 Southern Roof filed suit against Sho-Me and Jehle-Slauson
August 13, 1980 Jehle-Slauson filed a cross-claim against Sho-Me.
December 9, 1980 Complaint and cross-claim dismissed with prejudice, on stipulation of the parties.
 Action No. 3 (CV-81-1218)
May 28, 1981 Sho-Me filed suit against Jehle-Slauson.
July 9, 1981 Jehle-Slauson filed a third-party complaint against Southern Roof.
October 28, 1983 Summary judgments granted in favor of defendant Jehle-Slauson and third-party defendant Southern Roof.
Jehle-Slauson filed an action on June 30, 1980, (Action No. 1) upon a lien against Sho-Me and others in the Circuit Court of Mobile County, claiming monies due under its contract as of the date of the cancellation by Sho-Me. This suit was settled, with Sho-Me executing a release on February 17, 1981, in connection with the settlement. In pertinent part, as events will show, this release contained the following provision:
 "Provided, however, that all rights of the undersigned are preserved with respect to the `mildew problem' referred to in the letter attached to this release as Exhibit `A' and with respect to any defects in workmanship or materials which are neither (a) evident and obvious at the present time nor (b) known by the undersigned to exist at the present time;"
The letter referred to in this exception was written on December 30, 1980, by Ms. Bert S. Rector, manager of Mobile Howard Johnson's, to Jehle-Slauson:
 "We are experiencing a mildew problem in a number of the rental units. Most of the problems are in buildings D, A and B. There is one area of mildew in building C. The mildew is on the common unit wall which has a double layer of sheet rock; the exterior wall over the thru-wall heating/cooling unit; and on the sheet rock behind the paneling. There does not appear to be any mildew on the bathroom or corridor walls.
 "Preliminary investigation has indicated that the cause is from excessive moisture being in the sheet rock at the time of installation.
 "Please make arrangements to inspect the problem in order that corrective action can be taken under the contractor's one year guarantee."
The settlement agreement between Sho-Me and Jehle-Slauson, dated March 27, 1981, contained, among other terms, these provisions:
 "WHEREAS, the said action has been settled and will be dismissed by the Plaintiffs with prejudice
"It is hereby AGREED by the parties as follows: *Page 86 
 "The settlement and dismissal of the aforementioned case shall not preclude SHO-ME OF ALABAMA, D/B/A MOBILE HOWARD JOHNSON'S; SHO-ME MOTOR LODGES, INC. OF ALABAMA; SHO-ME MOTOR LODGES, INC.; McLEAN ENTERPRISES, INC.; THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; and THE LINCOLN NATIONAL LIFE INSURANCE COMPANY from the filing of a suit against JEHLE-SLAUSON CONSTRUCTION COMPANY based upon any warranty rights which exist arising from the agreement between some of the parties dated September 19, 1979, as amended February 7, 1980.
 "It is the intention of the parties hereto to set forth the AGREEMENT of JEHLE-SLAUSON CONSTRUCTION COMPANY that the filing of a later claim against it arising from any warranty rights which exist under the above described contract shall not be considered or asserted to be a compulsory counterclaim which should have been filed in the above described action."
The lawsuit brought by Jehle-Slauson, accordingly, was dismissed on March 27, 1981, "by stipulation of the parties."
Shortly after Jehle-Slauson filed suit against Sho-Me, Southern Roof brought an action against Sho-Me, Jehle-Slauson, and others (Action No. 2), based upon a lien arising out of Southern Roof's subcontract with Jehle-Slauson. Jehle-Slauson cross-claimed against Sho-Me. Both the original action and the cross-claim were settled and, upon a stipulation for dismissal by the parties, dismissed on December 9, 1980. In that connection, Southern Roof had executed a release on December 4, 1980, in favor of Sho-Me and Jehle-Slauson containing this clause:
 "[Southern Roof] further agrees that it understands that, anything in this document to the contrary notwithstanding, it continues to be responsible for any work or repairs or labor or material furnished upon the Mobile Howard Johnson's, for any warranties, express or implied by contract or law, to the extent of the same."
During the pendency of Action No. 1 and Action No. 2, as suggested by the above letter of Ms. Rector, sometime in August of 1980, Sho-Me discovered the mildew problem when one of the maids at the Mobile Howard Johnson's discovered discoloration on the walls of one room and reported it to the housekeeper. During August and September of 1980, Sho-Me, in an apparent effort to determine the cause of this condition, had inspections conducted by several contractors, but the inspections proved inconclusive. Therefore, Sho-Me had studies performed by two testing laboratories. The reports of these two laboratories were completed in November and December of 1980. On December 30, 1980, Sho-Me gave written notice of the mildew condition to Jehle-Slauson and Southern Roof.
On May 28, 1981, Sho-Me filed suit in the Circuit Court of Mobile County against Jehle-Slauson (Action No. 3). In this complaint, Sho-Me claimed damages as a result of the mildew condition that had developed at the Mobile Howard Johnson's following Hurricane Frederic. Specifically, Sho-Me contended that in supplying and using moisture-laden sheetrock, Jehle-Slauson breached its written contract with Sho-Me for the repair of this storm-related damage by supplying defective workmanship and material and breached its implied warranty that the work performed pursuant to this contract would be accomplished in a good and workmanlike manner.
In July of 1981, Jehle-Slauson answered the complaint, denying allegations of breach of contract and breach of warranty made by Sho-Me. In addition, Jehle-Slauson advanced third-party claims against Southern Roof as the subcontractor who performed the sheetrock work in the Sho-Me project, and Sho-Me's architect, Hood-Rich Architects and Consulting Engineers. The architects were taken out of the action by summary judgment, which was affirmed by this Court inJehle-Slauson Construction Co. v. Hood-Rich Architects, *Page 87 435 So.2d 716 (Ala. 1983). In its third-party complaint against Southern Roof, Jehle-Slauson alleged that it and Southern Roof had entered into a subcontract by which Southern Roof agreed to perform work required by the contract to include furnishing all labor and material to install all sheetrock walls.
Southern Roof answered the third-party complaint of Jehle-Slauson by pleading a general denial and certain affirmative defenses.
After extensive discovery, Jehle-Slauson moved for summary judgment based upon the pleadings, discovery materials, the depositions of Charles Sturgell and Bert Rector, and the files of the earlier case of Southern Roof v. Sho-Me, et al. That motion was denied. Jehle-Slauson moved for a reconsideration of this action, while Southern Roof also moved for summary judgment. Upon reconsideration of Jehle-Slauson's motion and consideration of Southern Roof's motion, the trial court entered the following order:
 "October 28, 1983 Motion [of defendant Jehle-Slauson] to reconsider, Granted; and upon reconsideration, defendant, Jehle-Slauson Construction Company's motion for summary judgment denied on August 29, 1983, hereby set aside and motion for summary judgment Granted; Cause dismissed as to said defendant, costs taxed to plaintiff; The Court further finds there is no just reason for delay in the entry of said final judgment."
The order entered on the motion for summary judgment filed by Southern Roof reads:
 "October 28, 1983 Motion for summary judgment Granted; Third party complaint dismissed as to third party defendant, Southern Roof Deck Applicators, Inc., costs taxed to third party plaintiff; And the Court further finds there is no just reason for delay in the entry of said final judgment."
This appeal by Sho-Me from both judgments followed.
Jehle-Slauson and Southern Roof have filed separate motions to dismiss this appeal taken by Sho-Me.
Jehle-Slauson's motion is grounded upon the assertion that the judgment appealed from is not a final judgment and thus will not support an appeal. In the alternative, Jehle-Slauson moves that this case be remanded to the trial court for entry of a final judgment under Rule 54 (b), A.R.Civ.P.
Of course, Rule 54 (b) requires "an express determination that there is no just reason for delay." Each of these judgments contains the express language that "the Court further finds that there is no just reason for delay." Moreover, Rule 54 (b) requires "an express direction for the entry of judgment." Each of these judgments contains the express language "[m]otion for summary judgment granted," and both continue, "there is no just reason for delay in the entry ofsaid final judgment." (Emphasis added.)
Apparently Jehle-Slauson contends that these entries were fatally deficient for the absence of the word "directs" from the language used to grant summary judgment. We cannot agree with such an interpretation. In Foster v. Greer Sons, Inc.,446 So.2d 605, 609 (Ala. 1984), this Court announced:
 "The adoption of our rules of civil procedure, which provide for the liberal joinder of claims and parties, created the need for a vehicle to allow an appeal from an order which does not adjudicate the entire case but as to which there is no just reason for delay in the attachment of finality. Cates v. Bush, 293 Ala. 535, 307 So.2d 6 (1975). Rule 54 (b) is that vehicle. It allows the court to enter a final judgment immediately if, under the circumstances, to wait until the entire case is decided would create injustice. Its non-use or improper use can lead to the kind of problems encountered in this case and can create, rather than eliminate, unnecessary delay."
 "In light of the purpose behind Rule 54 (b), we take this opportunity to announce a new procedure in this Court. *Page 88 
When it appears from the record that the appeal was taken from an order which was not final, but which could have been made final by a Rule 54 (b) certification, we will remand the case to the trial court for a determination as to whether it chooses to certify the order as final, pursuant to Rule 54 (b), and if it so chooses, to enter such an order and to supplement the record to reflect that certification."
In this case, from a reading of the language used, the order entered appears to be a final order under Rule 54 (b) and it obviously was so intended. The motion of Jehle-Slauson to dismiss this appeal is denied.
Southern Roof's motion to dismiss the appeal is based upon a different ground. Southern Roof argues that Sho-Me is not aggrieved by the judgment entered in favor of Southern Roof in the third-party claim of Jehle-Slauson against Southern Roof, and that Sho-Me has no other interest in the third-party action commenced by Jehle-Slauson. That ground raises the question of whether or not the plaintiff, Sho-Me, should be permitted to appeal from a summary judgment for Southern Roof, which was entered on the third-party complaint filed by Jehle-Slauson against Southern Roof and which was not appealed by Jehle-Slauson. We answer that question in the negative.
Who may appeal from a judgment? Ordinarily, one who is not a party to a cause cannot appeal. Security Life Accident Ins.Co. v. Crescent Realty Company, 273 Ala. 624, 143 So.2d 441
(1962); Hunt v. Houtz, 62 Ala. 36 (1878). Moreover, when an error applies only to a party who does not appeal therefrom, another party cannot make any such error an issue on appeal.Rush v. Heflin, 411 So.2d 1295 (Ala.Civ.App. 1982); Kirkland v.Kirkland, 281 Ala. 42, 198 So.2d 771 (1967). Although Southern Roof is a third-party defendant in this case, plaintiff Sho-Me is in no way aggrieved by the summary judgment entered in Southern Roof's favor and against Jehle-Slauson. Jehle-Slauson filed a third-party complaint against Southern Roof, seeking indemnity for any liability it might have to Sho-Me. Sho-Me has not asserted any claim directly against Southern Roof, and it has not been shown to us that Sho-Me has any interest in Jehle-Slauson's third-party action. When summary judgment was entered against it as to the third-party complaint, Jehle-Slauson, though it was the party aggrieved by that judgment, did not appeal. Sho-Me, for aught that appears, has looked to Jehle-Slauson for its recovery, and has been indifferent to the manner and means by which Jehle-Slauson, in turn, might protect itself. Fuller v. Branch County Commission,520 F.2d 307 (6th Cir. 1975); Bryant v. Technical Research Co.,654 F.2d 1337 (9th Cir. 1981).
Because Sho-Me was not a party aggrieved by the judgment entered against Jehle-Slauson in its third-party claim against Southern Roof, it could not appeal from that judgment. Therefore, the motion of Southern Roof to dismiss Sho-Me's appeal of that judgment must be, and is, granted.
The remaining question is whether the summary judgment entered against Sho-Me in its claim against Jehle-Slauson was appropriate. We hold that it was not appropriate.
Summary judgment is authorized only when the moving party clearly shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Kutack v. Winn-Dixie Louisiana, Inc., 411 So.2d 137 (Ala. 1982).
Jehle-Slauson argues that summary judgment was appropriate in Sho-Me's action against Jehle-Slauson because of the effect of Rule 13 (a), A.R.Civ.P., the compulsory counterclaim rule:
 "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties *Page 89 
of whom the court cannot acquire jurisdiction."
The argument proceeds in this manner:
In July 1980, Southern Roof sued Sho-Me and Jehle-Slauson (Action No. 2), claiming damages allegedly due under Southern Roof's dry wall subcontract with Jehle-Slauson. Jehle-Slauson cross-claimed against its co-defendant, Sho-Me, claiming damages due under its contract with Sho-Me for the storm damage repairs. That litigation was dismissed on December 9, 1980. Jehle-Slauson points out that the mildew condition was discovered by Sho-Me in August 1980, and Sho-Me notified Jehle-Slauson and Southern Roof of the problem on December 30, 1980, yet Sho-Me failed to assert a counterclaim against Jehle-Slauson based upon the mildew problem. See Ex parteReliance Ins. Co., 404 So.2d 610 (Ala. 1981).
Jehle-Slauson cites us to the deposition of Ms. Rector, manager of Sho-Me:
 "Q. The mildew problem was discovered as early as August of 1981?
"A. August of 1980.
"Q. It was discovered by one of your housekeepers?
 "A. Discovered by the executive housekeeper. We thought at first — at first, she thought that somebody had spilled something on the wall. I looked at it, and it looked like somebody had — some kind of dye. I said, well, let's see if we can get it off. We used several things, and it seemed to make it worse. Then we had other rooms that started appearing within just a few days. Thereafter, it seemed that from then on, as time went on, we had more and more rooms that began to just show up.
 "Q. When did you first advise anyone with McLean Enterprises of this problem?
"A. The mildew problem?
"Q. Yes. Was it immediately?
 "A. Oh, I'm sure it was immediately, because I discussed it with Charlie Sturgell. I remember a telephone conversation with him. He said, well, you know, I have not yet determined whether we have water getting down between the walls. That was my first thought, that water could be coming in through the roof and leaking down between the walls. We were starting on our Hattiesburg project. Everybody was down in Mobile about that time. The contractor that was discussing the job for the Hattiesburg project, we all met there, and he said, well, hey, I'll go look at that. They went up and looked at it, and he said, it's just mildew. You have mildewed walls.
"Q. Was this also in August?
 "A. This was about the end of August or the first part of September.
"Q. Okay.
"A. We were well aware of it in August."
As Jehle-Slauson insists, it is established by the record that Sho-Me was aware of a mildew condition. Mere awareness of that condition, however, does not establish that Sho-Me was also aware that it had a claim against Jehle-Slauson for that condition.
The following appears in the affidavit of Ms. Rector:
 "Affiant says that in August of 1980 one of the maids at the Mobile Howard Johnson's discovered discoloration on the walls of one of the rooms which was reported to her through the housekeeper. This was the first indication of the mildew problem which is the subject of the instant suit. In the months following other indications of mildew appeared in other rooms of the Motor Lodge; the problem did not evidence itself in a number of rooms until some time in 1981 and the full extent of the damage from the mildew situation was not apparent until approximately May or June of 1981."
According to the record, in an attempt to determine the cause
of the mildew problem, Sho-Me began an investigation, employing a roofing contractor, a Mobile laboratory (the Geotechnical Laboratory), and a New Orleans laboratory (Pittsburgh Testing Laboratory) to make findings. The New Orleans laboratory report is dated December 8, 1980, and it was not until *Page 90 
after that report was received that Sho-Me's architect gave his opinion as to the cause of the mildew being the application of wet sheetrock. Both Southern Roof's original action and Jehle-Slauson's cross-complaint were dismissed on December 9, 1980, on the stipulation of the parties. It appears from the record that Sho-Me did not have the report of the New Orleans laboratory or the opinion of its architect on December 9, 1980, and therefore could hardly be expected to file a counterclaim in an action which had been settled and dismissed before Sho-Me knew that such a claim actually existed. As we pointed out above, Sho-Me became aware of the mildew condition in August or September, but this is entirely different from knowledge that it had a claim against Jehle-Slauson for causing this condition.
Rule 13 (a), A.R.Civ.P., requires a party to file as a counterclaim "any claim . . . the pleader has against any opposing party" which arises out of the same transaction or occurrence involved in the opposing party's claim. Implicit within this requirement, however, is the knowledge that one has a claim against the opposing party. Certainly Rule 13 (a) cannot be construed to require a party to file as a compulsory counterclaim a claim which it does not know it has.[1]
Jehle-Slauson filed its cross-claim in Action No. 2 against Sho-Me on August 13, 1980. It was not until after this filing that Sho-Me even discovered the mildew condition existed. Sho-Me thereafter undertook to investigate the cause of this condition. It is through no apparent fault of Sho-Me that Action No. 2 was settled and dismissed before its investigation into the mildew problem was complete and it became aware of an actual claim against Jehle-Slauson.
Moreover, Sho-Me's release of Jehle-Slauson in Action No. 1, dated February 17, 1981, also quoted above, preserved Sho-Me's rights "with respect to the mildew problem" and "any defects in workmanship or materials which are neither (a) evident and obvious at the present time nor (b) known by the undersigned to exist at the present time." In addition, the settlement agreement between Sho-Me, Jehle-Slauson, and others not only expressly reserved Sho-Me's right to file suit against Jehle-Slauson "based upon any warranty rights which exist arising from the agreement between some of the parties dated September 19, 1979, as amended February 7, 1980," but went further and stated:
 "It is the intention of the parties hereto to set forth the AGREEMENT of JEHLE-SLAUSON CONSTRUCTION COMPANY that the filing of a later claim against it
arising from any warranty rights which exist under the above described contract shall not be considered or asserted to be a compulsory counterclaim which should have been filed in the above described action."
(Emphasis added.)
It appears from this agreement that Sho-Me and Jehle-Slauson agreed that a later claim for warranty rights would not have been considered a compulsory counterclaim. As this Court held in a recent case, Brooks v. Peoples National Bank ofHuntsville, 414 So.2d 917, 920 (Ala. 1982):
 "The counterclaim rule is based on the equitable principle of collateral estoppel. ARCP 13, Committee Comments. The principle bars parties in a subsequent proceeding from asserting any matter which might or ought to have been litigated in a prior proceeding. Id. (citing A.B.C. Truck Lines, Inc. v. Kenemer, 247 Ala. 543, 25 So.2d 511 (1946)). But the principle of collateral estoppel will *Page 91 
not bar assertion of a claim which the parties agreed to leave to a subsequent proceeding."
See also Nero v. Chastang, 358 So.2d 740 (Ala.Civ.App.), cert.denied, 358 So.2d 744 (Ala. 1978) (a valid compromise agreement is conclusive only as to those matters which the parties fairly intended to include within its terms, and settlement is effective except as to those elements of the claim specifically reserved).
The agreement between Jehle-Slauson and Sho-Me specifically states that a later claim for warranty rights shall not be considered to have been a compulsory counterclaim "in the above described action." The action referred to is Action No. 1, which was Jehle-Slauson's original action against Sho-Me. It is now Jehle-Slauson's contention that Sho-Me should have filed the claim related to the mildew condition as a compulsory counterclaim in Action No. 2. However, Jehle-Slauson's cross-claim against Sho-Me in Action No. 2 stated:
 "As a cross-claim against Sho-Me Motor Lodges, Inc., defendant, Jehle-Slauson Construction Company, adopts hereby and incorporates by reference each and every allegation made by it in the complaint in that action entitled `JEHLE-SLAUSON CONSTRUCTION COMPANY, etc., Plaintiff vs. SHO-ME OF ALABAMA d/b/a MOBILE HOWARD JOHNSON'S, et al., Defendants,' [Action No. 1] presently pending in the Circuit Court of Mobile County, Alabama, a true copy of which complaint is attached hereto as Exhibit `A.' Defendant and cross-claimant, Jehle-Slauson Construction Company, hereby demands judgment against defendant and cross-defendant, Sho-Me Motor Lodges, Inc., exactly as set out in Exhibit `A.'"
Consequently, Jehle-Slauson's cross-claim in Action No. 2 was the same as its claim in Action No. 1 and, as to Jehle-Slauson and Sho-Me, Action No. 2 was one and the same with Action No. 1. In view of this fact and the fact that the agreement in Action No. 1 was executed on March 27, 1981, several monthsafter Action No. 2 had been settled and dismissed, the agreement specifically preserving Sho-Me's right to bring a later action extended to Action No. 2.
The appeal of Sho-Me from the summary judgment in favor of Southern Roof in Jehle-Slauson's third-party claim against Southern Roof is hereby dismissed.
For the reasons stated above, the summary judgment entered in favor of Jehle-Slauson on Sho-Me's claim against Jehle-Slauson is reversed, and that cause is remanded for further proceedings.
It is so ordered.
APPEAL DISMISSED AS TO SOUTHERN ROOF; REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] By way of illustration, suppose A, who is going away for six months, wrongfully leaves his car on B's property. While A is away, B proceeds to spray the car with a discoloring material. When A returns, he immediately becomes aware that his car is discolored. However, A does not know whether the discoloration is due to exposure to the elements or to some other cause. If B files an action against A for trespass, A, having no knowledge that he has a counterclaim against B for the discoloration of his car, cannot logically be required to file a counterclaim.