DONALDSON, Judge.
This appeal and cross-appeal follow a judicial determination of a boundary line between coterminous adjoining properties. Because the judgment from which the appeal and cross-appeal were taken did not adjudicate the claims or interests of all parties nor adjudicate all of the claims for relief contained in the complaint, the judgment is not final and the appeal and the cross-appeal must be dismissed.

Facts

Daisy Irene Mitchell,[1] Leon Mitchell, Shirley M. Smith, and Kay M. Rayburn (hereinafter referred to collectively as “the Mitchells”) own certain land in Jackson County that adjoins land owned by James Kevin Webb and Nancy Carol Reid Webb (“the Webbs”). The Mitchells filed a complaint seeking a judgment determining the ownership rights to a certain strip of property (“the disputed property”) and declaring the location of the correct boundary line between their properties. The Mitch-ells also sought temporary injunctive relief, permanent injunctive relief, and damages for trespass. The trial court granted temporary injunctive relief restraining the Webbs from certain acts relating to the disputed property. The Webbs answered the complaint asserting ownership to the disputed property and denying that the *141 boundary line was located where the Mitchells claimed. The Webbs sought a determination that the boundary line was in a different location. Following a pretrial conference in March 2008, the trial court entered the following order:
“Based upon the assertions of [the Mitchells] that the disputed strip of property was used in the past by adjoining land owners for access, namely Addie Wilhelm, Rupert Shelton and Mildred Moore, this matter is continued to allow [the Mitchells] 30 days to amend their pleadings to add said persons as parties to prevent multiplicity of litigation.”
The Mitchells amended the complaint on May 8, 2008, to add Addie Wilhelm, Rupert Shelton, and Mildred Moore as defendants (hereinafter collectively referred to as “the added defendants”). The Mitchells asserted that the added defendants each owned property adjoining either the Mitchells’ property or the Webbs’ property and accessed that property by using an old road bed located within the disputed property. The Mitchells asserted that any ruling by the court on the boundary line between their property and the Webbs’ property would affect the added defendants’ ability to access their own property. In their claim for relief, the Mitchells sought an order “adjudicating the respective rights of the various parties” as to the disputed property. The amended complaint further incorporated all of the claims and allegations contained in the original complaint.
On May 15, 2008, the Webbs responded to the amended complaint by generally denying the allegations in the complaint and reasserting their position as to ownership of the disputed property and the eor-rect location of the boundary line. The Webbs also stated:
“The Court’s establishment of the boundary line between the property of the [Mitchells] and the property of [the Webbs] does not impede or impair the property rights of the Defendants Addie Wilhelm, Rupert Shelton or Mildred Moore. If these [added] Defendants are landlocked, then they are entitled to an easement by necessity or by implication over the property of the [Mitchells] but are not entitled to an easement or right of way over and along the property of [the Webbs]. Any roadway that was formerly used by any of the added Defendants has been abandoned by non-use for more than twenty years.”
The Webbs further asked the court to establish the boundary line between the Webbs’ property and Mitchells’ property in a manner “which by necessity would also establish the property line between [the Webbs] and the [added] Defendant, Mildred Moore.”
On June 4, 2008, Mildred Moore[2] filed an answer to the amended complaint without counsel and stated:
“1. Yes, I Mildred Moore do own property behind the Plaintiff, Irene Mitchell. Over the years our right of way to our land had been through the Disputed Area. Which we have always thought was on the Plaintiffs land.
“2. Yes we- have been using the old road bed as access to our land. During the last 15 years my Grandson and Great Grandson have walked this road bed as a path to my land to deer hunt and turkey hunt.
“3. I hope that we can continue to use the old road bed as access to our property as in the past.”
*142 On June 8, 2010, Addie Wilhelm, one of the added defendants, filed an answer without counsel.[3] She admitted owning land adjacent to the Mitchells’ property, but denied knowing anything about the location of the boundary line between the Mitchells’ property and the Webbs’ property.
On June 12, 2008, Rupert Shelton, one of the added defendants, filed an answer without counsel stating that the disputed property was not “well-defined” but denying that he had any ownership interest in the disputed property as depicted by a drawing attached to the amended complaint. He also stated:
“3. Should Defendant SHELTON’s access to his property be found to cross the disputed property, SHELTON hereby claims and reserves his continued right to access his property via the disputed property.
“4. Defendant SHELTON has accessed his property via disputed road bed within last twenty (20) years.”
The Webbs filed a “Response to Answer of Rupert Shelton to Amended Complaint.” The response was conditional in several respects, claiming in part that Shelton’s access to their land had been permissive and limited and that they intended to continue to allow this type of access. Further, the Webbs suggested that the claims of Shelton may be more closely aligned with claims of Daisy Irene Mitchell, a plaintiff in the action.
In their brief on appeal, the Mitchells included an illustration that displays the property owned by each party.[4] The Mitchells state:
“This case centers on that portion of the [Webbs’ and Mitchells’] coterminous boundary between the 90° westward turn of County 168 shown in the Illustration, and the northern boundary of the three parcels of the ‘Added Defendants’ also shown in the Illustration.”
Regarding the claims of the added defendants, the Mitchells state as follows:
“The Amended Complaint in this action, joining these three Defendants ... sought adjudication of the rights of those Defendants — Addie Wilhelm, Rupert Shelton, and Mildred Moore — to access their properties along the ‘wagon trail’ labeled on the Illustration. For various reasons, including the deaths of Wilhelm and Moore and uncertainty over the status of their estates, the Circuit Court chose not to determine that claim at the hearing on April 4, 2011.”
A trial was conducted on September 20, 2010, and April 4, 2011. When the proceeding began on September 20, the following occurred: ■
“THE COURT: ... And I’m ready if y’all are, gentlemen.
“[COUNSEL FOR THE WEBBS]: Judge, I believe all the plaintiffs are actual parties, and I want to make sure of that. With the changes and additions, I believe that is correct.
“THE COURT: Why don’t we address that. There was some issue about somebody having died.
“[COUNSEL FOR THE MITCH-ELLS]: Well, yeah. Judge, if I could address that, and I’m referring to the tax map, which shows three 16-acre strips—
*143 “THE COURT: Yes, sir.
“[COUNSEL FOR THE MITCH-ELLS]: — that adjoined both these plaintiffs and these defendants, and the dispute has to do with a continuation of this road that I’m pointing to—
“THE COURT: Yes, sir.
“[COUNSEL FOR THE MITCH-ELLS]: — that comes up the mountain here and has traditionally been used as an access by those three 16-acre landowners. They were added as parties some time ago, and since they’ve been added, two of them have passed away, Addie Wilhelm, who passed away months ago, if not over a year ago, and then Mrs. Curtis Moore, who I didn’t know until this morning had passed away much more recently. The other one — the other 16-acre strip landowner is Rupert Shelton. And they have filed a pro se answer, but they’re not here either. So basically the situation .as it exists this morning is that we have two landowners who are parties to the case who have passed away, and I don’t know the condition of their estate, whether there has been a probate or anything like that.
“THE COURT: Those are landowners of the 16-acre strips; is that correct?
“[COUNSEL FOR THE MITCH-ELLS]: Correct, your Honor.
“THE COURT: Is that your understanding, [counsel for the Webbs]?
“[COUNSEL FOR THE WEBBS]: It is my understanding.
“THE COURT: Are those folks necessary parties to the case? It looked to me like the dispute was up there on the curve.
“[COUNSEL FOR THE MITCH-ELLS]: Well, see, the problem is that—
“THE COURT: If there is no access, it leaves them landlocked.
“[COUNSEL FOR THE MITCH-ELLS]: Our contention is that the old roadbed, which constitutes essentially the disputed area, was a continuation of this county road that went on up the mountain and had traditionally been used by these parties for access to their land. And so I added them for two reasons: Number one, they had a lot of knowledge about the use of the disputed strip down through the years; number two, to prevent a future claim against the plaintiffs for private condemnation of the right-of-way in the event that we prevail or in the event that the Webbs prevail. Either party that prevails may in the future want to cut'them off, and if they’re parties, then any issues they had to prevent a future claim against the plaintiffs for private condemnation of the right-of-way in the event that we prevail or in the event that the Webbs prevail. Either party that prevails may in the future want to cut them off, and if they’re parties, then any issues they had could be better addressed.
“THE COURT: Well, I think the issue of access will just have to be raised at the appropriate time.
“[COUNSEL FOR THE MITCH-ELLS]: That suits me fine.
“THE COURT: Not today. And obviously if they’re not properly before the Court, we can’t address any issues they may have here today, but we’ll do what we can between these parties that are present.
“[COUNSEL FOR THE MITCH-ELLS]: All right.
“THE COURT: Unless somebody has got a better idea.
“[COUNSEL FOR THE WEBBS]: No, sir.”
Rupert Shelton, an added defendant, appeared and testified when the proceedings resumed on April 4, 2011. His testimony *144 appears to have been directed to the location of the boundary line and not to his ability to access his property.
During one portion of the cross-examination of James Webb, counsel for the Mitchells questioned him regarding whether he would allow the added defendants to access a portion of the disputed property if the trial court determined the location of the boundary line to be where he asserted it was.' James Webb testified:
“Q. How do you feel about use of the roadbed [located -within the disputed property]?
“A. If they want to continue to use between the property line and the fence line, that is fine with me.
“Q. What about in the area where the roadbed gets across your survey line before it gets to other property owners [i.e., the added defendants] back there? How do you feel about that?
“A. I have a problem with that.
“Q. You got a problem with it?
“A. Yes, sir.
“Q. Basically regardless of what the uses have been down through the decades, then you say that whatever your survey says is what you want to do regardless whether Mr. Shelton’s family, Mr. Wilhelm’s family, Ms. Moore’s family, the Mitchells, people in McBroom Hollow and all back through have used that roadbed, then you want to shut it down?
“A. That’s correct.”
On August 22, 2011, the trial court entered an order containing detailed findings of fact and granting the following relief:
“1. The court finds the issues in favor of the [Mitchells] against the [Webbs],
2. The boundary between the parties is fixed as the east margin of the pavement of County Road 168 and extending southwardly along the east margin of the old roadbed that runs or formerly ran onto the mountain which lies at the rear of the parties’ real estate.
8. The [Mitchells] are allowed 120 days herefrom to- submit to the court a precise description of this boundary prepared by a licensed real estate surveyor, along 'With a suggested order fixing the same as the boundary. Alternatively, the parties are free to agree where the east boundary lies on the ground and submit their agreement to the court by suggested order for entry.
4. Costs of this action are taxed to the [Mitchells] for which execution may be had according to law.
5. Except as stated in paragraph 3, above, this .is a final, appealable order for all purposes. ■
6. Pending further order of the court, no one shall block, obstruct, restrict, interfere or attempt to do the same with the Webbs’ driveway or their free ingress and egress from the same.”
The order did not address the Mitchells’ claims for damages for trespass or for permanent injunctive relief. Consistent with the discussions that occurred before the trial, the order also did not address the interests of the added defendants.
The Webbs promptly filed a motion asking the trial court to either make a determination that the August 22 order was “fínál” for purposes of Rule 54(b), Ala. R. Civ. P., or, alternatively, to delete paragraph 5 of that order. The Webbs asserted that neither the Webbs nor the Mitchells could determine the impact of the order on their property interests until the survey referenced in paragraph 3 of the order was completed. On October 11, 2011, the trial court entered an order stating as follows:
“Upon consideration of the [Webbs’] Motion to Certify Order pursuant to Rule *145 54(b), Alabama Rules of Civil Procedure, the Court finds that its Order of August 22, 2011 does not determine all issues pending before the Court and that there are remaining issues to be resolved. Therefore, the Court’s Order of August 22, 2011 is NOT certified as a final Order pursuant to Rule 54(b), Alabama Rules of Civil Procedure, any previous statement of the Court notwithstanding.” [5]
On November 21, 2011, the Webbs filed a “Motion for Reconsideration or in the Alternative to Alter, Amend or Vacate” the August 2011 order.[6] The trial court held a hearing on the motion on January 30, 2012. Only the Mitchells and the Webbs were present. On February 13, 2012, the trial court entered an order denying the motion to alter, amend, or vacate as “being premature,” because the survey referenced in the August 2011 order had not yet been approved and incorporated into a judgment. In that same February order, the court adopted a survey establishing the boundary line between the Mitchells and Webbs and stated: “This is a final, appeal-able order for all purposes.” The Webbs filed another motion to alter, amend, or vacate the February 2012 order. That motion was denied following a hearing.
Both the Mitchells and the Webbs filed timely appeals from the February 2012 order. The Webbs primarily argue that the evidence did not support the order determining the location of the boundary line, while the Mitchells' argue that the survey adopted by the court was not consistent with the location of the boundary line described generally in the August 2011 order. In their brief, the Mitchells note a “potential judisdictional flaw” in that the August 2011 and February 2012 orders did not address their claims for damages or for permanent injunctive relief.[7] The Mitchells claim that the testimony presented at trial established their right to damages and for injunctive relief.

Discussion

“Generally, this court’s appellate jurisdiction extends only to final judgments. § 12-22-2, Ala.Code 1975.
“‘A judgment is generally not final unless all claims, or the rights or liabilities of all parties, have been decided. Ex parte Harris, 506 So.2d 1003, 1004 (Ala.Civ.App.1987). The only exception to this rule of finality is when the trial court directs the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.’
Laney v. Garmon, 25 So.3d [478] at 480 [ (Ala.Civ.App.2009) ].”
Austin v. Austin, 102 So.3d 403, 406 (Ala.Civ.App.2012).
*146 There are two reasons why the appeals in this case are not from a final judgment. First, the claims of the Mitch-ells for damages and permanent injunctive relief were not addressed. See, e.g., Hall v. Reynolds, 27 So.3d 479 (Ala.2009)(dismissing an appeal when the order establishing a boundary line did not address the claims for damages and for injunctive relief); Day v. Davis, 989 So.2d 1118 (Ala.Civ.App.2008) (dismissing an appeal when a judgment establishing a boundary line did not address remaining tort claims). The Mitchells assert that they presented sufficient testimony at trial to establish their claims for damages and for permanent injunctive relief, i.e., they assert their claims were not waived by failing to present evidence on these claims at the trial. We agree. Therefore, the order did not adjudicate all of the rights and liabilities of the Mitchells and the Webbs and cannot support an appeal.
Second, the trial court’s orders did not address the claims involving the added defendants. . The discussions between counsel for the Mitchells and Webbs before trial indicate that those parties intended to have a separate trial if necessary regarding the interests of the added defendants. However, a separate trial of certain claims remains part of a single case, and an order resolving claims in one trial is not final and will not support an appeal. See Day v. Davis, supra (noting the distinction between a separate trial and a severed case). The claims involving .the added defendants were not severed, and the issues pertaining to those claims were not tried by the’ parties during trial. No party requested a default against any party properly named and served but not appearing at trial. Therefore, the claims involving the added defendants remain pending.
The next question is whether the February 2012 order was intended to be reviewable under Rule 54(b), Ala. R. Civ. P., which provides in pertinent part:
“When ... multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer that all of the ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. ... [I]n the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.”
The February 13, 2012, order does not contain all of the required, although perhaps archaic, language of 54(b) nor does it reference the subsection of the rule.[8] The order was certainly entered immediately and indicates it is “final” and “appealable.” Importantly, both the Mitchells and the Webbs have treated the order as appealable. There are circumstances in- which an appellate court can infer that an order was intended to be certified as .final under Rule 54(b) even when all of the language required by the rule was not used. See Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 87 (Ala.1985) (concluding *147 that the statement “ ‘[t]he Court further finds there is no just reason for delay in the entry of said final judgment’ ” was sufficient to make a judgment final pursuant to Rule 54(b)); see also Schneider Nat’l Carriers, Inc. v. Tinney, 776 So.2d 753, 755 (Ala.2000) (noting that “if it is clear and obvious from the language used by the trial court in its order that the court intended to enter a final order pursuant to Rule 54(b), then [an appellate court] will treat the order as a final judgment” even though the order may not contain all the language indicating that it is, in fact, an order directing the entry of a final judgment). But we must hold that the order in this case is not sufficient under Rule 54(b) because the record does not reflect that consideration was given to the Mitchells’ remaining claims or the claims involving the added defendants and whether there was a express determination that there was “no just reason for delay” in certifying the interlocutory order as final. A trial court is not required to certify an interlocutory order as final under Rule 54(b), nor is it required to articulate the reasons for the decision.[9] But if an interlocutory order is certified as final, a determination must have been made by the trial court that the adjudicated and the remaining claims are not “ ‘so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.’ ” Hetzel v. Fleetwood Trucking Co., 90 So.3d 180, 182 (Ala.Civ.App.2012) (quoting Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1263 (Ala.2010), quoting in turn other cases (some quotation marks omitted))(dismissing an appeal from an improperly certified interlocutory order). Although such a determination is not binding upon an appellate court, an expression on the record or within the order itself as to the reasoning of the trial court would be of great assistance in reviewing an order certified as final under rule 54(b).
If only the claims involving the added defendants remained, it would be appropriate to remand the case to the trial court for it to consider whether the order should bé certified as final under Rule 54(b):
“ ‘When it appears from the record that [an] appeal was taken from an order which was not final, but which could have been made final by a Rule 54(b) certification, we will remand the case to the trial court for a determination as to whether it chooses to certify the order as final, pursuant to Rule 54(b), and, if it so chooses, to enter such an order and to supplement the record to reflect that certification. The judgment will be taken as final as of the date the 54(b) certification is entered....
“ ‘... [I]f this Court remands the case to the trial court for the opportunity of making such a certification, the trial court will have the limited jurisdiction to enter a 54(b) certification if, in its discretion, it decides the entry of. such a certification is appropriate.’
“Foster v. Greer & Sons, Inc., 446 So.2d 605, 609-10 (Ala.1984), overruled on other grounds, Ex parte Andrews, 520 So.2d 507, 510 (Ala.1987).”
Hanner v. Metro Bank & Protective Life Ins. Co., 952 So.2d 1056, 1061-1062 (Ala.2006). But the remaining issues also involve the non-adjudicated claims of the Mitchells for damages and for permanent injunetiye relief, not just claims involving the added defendants, and separate adjudi *148 cation of these claims and the previously revolved claims would “ ‘pose an unreasonable risk of inconsistent results.’ ” Hetzel, 90 So.3d at 182. This court lacks jurisdiction to hear the appeals because all claims of all parties have not been adjudicated, and accordingly, the appeal and the cross-appeal must be dismissed.
APPEAL — DISMISSED.
CROSS-APPEAL — DISMISSED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ. concur.

. Daisy Irene Mitchell died during the course of the litigation. The executor of her estate, Freddie Leon Mitchell, was substituted in her place.

. It appears Mildred Moore died at some point during the litigation, but the record does not reflect that any substitution was made in her place.

. Addie Wilhelm died during the litigation. Russell David Wilhelm and Roger Jeff Wilhelm, as coexecutors of her estate, were substituted in her place.

. The “illustration” appears to be an ariel photograph of the parties’ properties and surrounding areas, with lines superimposed on the photograph to depict the location of the parties’ properties.

.Section 35-3-3, Ala.Code 1975, provides that a court may order a survey “after the ' entry of judgment” if the boundary lines at issue are otherwise ascertainable by reference to "well-known permanent landmarks.” This statute does not prohibit the court from ordering a survey at any other time including before the final establishment of the boundary line. See, e.g., § 35-3-20, Ala.Code 1975; Rule 706, Ala. R. Evid. In an appropriate case, reference to § 35-3-3 could be useful in determining whether an otherwise interlocutory judgment should be certified as final pursuant to Rule 54(b), Ala. R. Civ. P., before the preparation of the survey.

. This motion was filed more than 30 days after the entry of the order; however, the order did not determine all of the issues between the parties. Therefore, it remained “subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.” Rule 54(b), Ala. R. Civ. P. Because the judgment was nonfinal, the time periods of Rule 59, Ala. R. Civ. P., were not applicable.

. The August 2011 order enjoins certain activity from being taken that interferes with the Webbs’ rights, but not the Mitchells’ rights.

. With electronic filing and other modern court practices, whether the requirement in the rule of "express[ly] directing]” the entry of a judgment by the Clerk remains necessary is questionable. For example, an order rendered by the court and electronically filed is deemed to be "entered” at the same time. Rule 58(a)(5) and (c), Ala. R. Civ. P.

. The certification of an order under 54(b) should only be granted in ‘‘exceptional” cases. See Hetzel v. Fleetwood Trucking Co., 90 So.3d 180 (Ala.Civ.App.2012) (citing cases).