MAIN, Justice.
Jason Elkins and his wife, Paula Elkins, appeal from a summary judgment in favor of Stanley Maguire, Gabriel Collins, and Jeff Carroll (collectively referred to as “the co-employees”). We remand the cause to the Madison Circuit Court (“the trial court”).
I.
TDY Industries, LLC (“TDY”), hired Jason Elkins as a screener operator on October 19, 1998. Jason Elkins operated various pieces of machinery in the course of his employment, including a Dalmec brand manipulator. A manipulator is used to grasp and. lift heavy drums of powder that are then dumped into a screening tub. The manipulator has a pivoting arm that moves horizontally and vertically to grasp objects. The controls for the pivoting arm have handlebars the operator uses to maneuver the arm. The arm has a set of clamps that grasp the drums so they can be lifted and dumped. All TDY employees received hands-on training on operating the manipulator.
On March 7, 2013, a supervisor at TDY instructed Jason Elkins to dump several drums of powder. While he was operating the manipulator to dump powder from a drum, the manipulator rose and hit him under the chin and then descended and hit him in the head. Jason Elkins states that he is approximately five feet, six inches tall and that, when he was injured, the controls for the manipulator-were higher than he is tall. The manipulator, he says, contained an adjustment nut that limited the travel height of the manipulator’s lift arm, the sole purpose of which was as a safety function. He states that he had seen the manipulator rise to its' maximum height with another operator before he was injured.
Mark--White was the first coworker to respond to Elkins. White completed a written witness statement on the date of the injury. He stated that he heard a loud noise in the screening/charging area and that he saw Jason Elkins leaving the opposite end of the room. White said he noticed that the manipulator was higher than normal and that the drum had been dropped onto the floor and the powder had spilled all around it. He also' stated that Jason Elkins had beén hit with the manipulator and needed medical attention. White further noted that Jason Elkins complained of pain in his neck and shoulder and of blurred vision.
. Maguire, Jason Elkins’s supervisor, and Collins, TDY’s plant manager, jointly investigated Jason Elkins’s injury. Maguire completed a “Supervisor’s First Report of Incident/Illness Form” on the date of the injury. The supervisor’s first report indicates that Jason Elkins was injured while performing his work duties when the “Manipulator equipment rose rapidly after dropping 550 lb. load, striking employee on resend [and] again on descent.” • The supervisor’s first report also noted that Jason Elkins suffered a “possible mild or severe concussion.” Carroll, the safety specialist at TDY, provided comments and feedback in drafting that report.
TDY’s' human-resources manager completed an “Employer’s First Report of Injury”' form on March 8, 2013. That report states that, “while the [employee] was operating a 17 gallon drum, the manipulator equipment rose rapidly and struck the [employee] when the equipment was going up and again when it descended.” -The first report of injury also notes that Jason Elkins “sustained a mild concussion” and “went to the emergency hospital after the incident.” Collins noted that Jason Elkins appeared confused and incoherent after the injury and that it appeared to him that *292 Jason Elkins had suffered an injury similar to a concussion.
Maguire completed a supervisor’s incident-analysis addendum to the first report of injury, in which he stated:
“On 3/7/13 an operator was using Manipulator to lift a 17 gal drum. This operator had been trained on the manipulator, but had not used it often. The 17 gal drum weighed 550 lbs, well within the 880 lb equipment capacity. While lifting the load, the drum unexpectedly fell out of the manipulator putting 550 lbs of hydraulic lifting force against an inexperienced operator. It is unclear exactly how the employee lost balance and moved below the equipment. This movement forward put the operator into the line of fire of the manipulator bouncing back to a lower position striking the employee in the head and shoulders region. The employee suffered a concussion and was taken to the hospital for treatment. He is currently expected to make a full recovery.”
Maguire also answered questions in the incident-analysis addendum as follows:
“1. Why Did the Employee Get injured? Struck by manipulator. Manipulator has many safety features to control the hazard. These give a false sense of security while using the equipment.
“2. Why was that so? Unit has pressure sensors and lights that were functioning properly. However, if the grabbers are set by the operator on the rib reinforcement or are at an angle, the unit will hit the required pressure. But when the load is lifted, these issues could cause the load to shift and drop.
“3. Why was that so? Unit has a locking mechanism that can be activated during the dumping portion of the job which is the highest risk of dropping the load. This activates brakes that will keep the unit in place as the load is dumped. This cannot be activated when the load is being moved. Since the load was being moved at the time of the drop, the locking mechanism was not activated.
“4. Why was that so? If the load is dropped when activating the lifting mechanism, the unit is actively applying force. In this case, 550 lbs of upward force was applied to the operator holding the control handles. The unit released stored energy by lifting the unit straight up at a rapid rate, and then it will bounce back depending on the energy released.
“5. Why was that so? The unit height was set near the max of the manipulators capabilities. There was never a review to determine the actual height required. This contributed to the injury because the unit could raise high enough to allow an operator to reasonably get under the equipment during a failure.”
Jason Elkins filed a workers’ compensation action against TDY seeking benefits for his work-related injury. He later amended his complaint to add Paula El-kins as a plaintiff and to sue the co-employees pursuant to § 25 — 5—11(c) (2), Ala. Code 1975, based upon the theory that the co-employees removed a safety device and that the removal of that safety device proximately caused Jason Elkins’s injury.[1] The complaint, as so amended, alleged:

*293
“COUNT TWO

“1. On or about March 7, 2013, while working within the line and scope of his employment for Defendant TDY INDUSTRIES, LLC, the Plaintiff JASON ELKINS received injuries arising out of and in the course of his said employment with [TDY] when he was struck in the head by a Dalmec manipulator or other machine.
“2. Said Defendants STANLEY D. MAGUIRE, GABRIEL COLLINS, and JEFF CARROLL ... were supervisory employee(s), executive officer(s) or employees of Plaintiffs employer, TDY Industries LLC, and as such, had the right to and did control the conditions, methods and manner in which work was performed at the time and place of the occurrence made the basis of [the El-kinses7] complaint as set forth in the Complaint and this Amendment.
“3. Said Defendants willfully failed to properly control the conditions, methods and manner in which said work was performed and said willful conduct was a proximate cause of Plaintiffs injuries and damages hereinafter described.
“4. Said Defendants willfully and intentionally removed, or failed to install, repair or replace, from the machine and related equipment a safety guard or device, with knowledge that injury or death would likely or probably result from the machine and related equipment, or knew, or, with reasonable care, should have known of the state of danger and willfully and/or intentionally failed to prevent this injury from occurring, in violation of Ala.Code § 25-5-11(c)(2) (1975).
“5. [(The Elkinses] further aver that one or more of the fictitious party Defendants listed and described in the caption hereinabove willfully and intentionally violated a specific safety rule of the employer as set forth in Alabama Code § 25-5-ll(c)(4) resulting in Plaintiffs injury-
“6. The aforesaid wrongful conduct of the above-described Defendants was the proximate cause of Plaintiff Jason Elkins’ injuries and damages as described hereinbelow.
“7. As a proximate result of said accident, the Plaintiff suffered injuries to his head, neck, back and upper extremities. Subsequent to said injury, the Plaintiff was caused to obtain medical treatment, including surgery, has incurred medical bills, and has a permanent partial disability or a permanent total disability as a consequence of the accident or injuries described above. He has incurred medical bills for treatment and will continue to do so in the future. He has suffered a loss of earnings and will in the future. He has endured great pain and suffering and mental anguish and will in the future. His injuries are permanent in nature.
“Plaintiff Paula Elkins has suffered and will in the future continue to suffer a loss of consortium as a result of the above described injuries of her husband Jason Elkins.
“8. The foregoing allegations are realleged against the fictitious party Defendants ‘D, E, F,’ whether singular or plural, that person or those persons who were employees or executive officers of Plaintiffs employer who were guilty of willful conduct on or before the occasion made the basis of this suit and whose willful conduct was a proximate cause of Plaintiffs injuries; ‘G, H, 1/ • whether singular or plural, that entity or those entities, that individual or those individuals who or which transported, set up, repaired, altered, or maintained the machine and related equipment involved in *294 the< occurrence made the basis of this ■lawsuit; ‘J, K, L,’ whether singular or plural, that entity or those entities who or which issued, or had a duty to issue, warnings or instructions regarding the use or operation of the machine' and related equipment involved in. the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; ‘M, N, 0/ whether singular or plural, that entity or those entities who or which tested, inspected, approved, or issued any approval of the machine and related equipment involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; ‘P, Q, R,’ whether singular or plural, that entity or those entities other than those entities described above whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit; ‘S, T, U,’ whether singular or' plural, that entity or those entities other than those entities described above, which is the successor in interest of any of those entities described above; ‘V, W, X,’ whether singular or plural, that entity or those entities other than those entities described above, which was the predecessor corporation of any of the entities described above; ‘Y, Z, AA,’ whether singular or plural, that entity or those entities who or which participated in the- matters alleged herein; ‘BB, CC, DD,’ whether singular or plural, the individual, that entity or those entities, who or which did or failed to do any act that resulted, in Plaintiffs injuries and ■damages made the basis of this suit; ‘EE, FF, GG,’ whether singular or plural, the individual, that entity or those entities, other than .those described above, whose negligence, wantonness or other wrongful conduct contributed to cause the occurrence made the basis of this lawsuit; [the Elkinses] aver that the identities of the fictitious party Defendants is otherwise unknown to.the [El-kinses] at this time, or if their names are known to [the Elkinses] at this time their identities as proper parties Defendant is not known to [the Elkinses] at this time, but their true names will be substituted by amendment when ascertained.
“WHEREFORE, [the Elkinses] de- , mand judgment against the Defendants, including the fictitious party Defendants, in a sum which will fairly and adequately compensate the Plaintiff [Jason Elkins] for his injuries and damages sustained. Further, [the Elkinses]-request that the jury award punitive, damages to [the El-kinses] in- an amount which will adequately reflect, the enormity of the Defendants’ wrongful act and which will effectively prevent other similar wrongful, acts.
. “COUNT THREE .
. “9. Paragraphs 1 through 8 are hereby realleged and incorporated by reference as if the same had been fully set out herein,. -
. “10. One or more of the non-employer fictitious party Defendants listed and described in the caption and in parar graph 8 hereinabove negligently or wantonly failed to- maintain, repair, transport, set up, or altered the machine and related equipment involved in the occurrence made the basis of this lawsuit prior-to the incident made the basis of the complaint,
“11. As a proximate result of said accident, the Plaintiff [Jason Elkins] suffered injuries to his head, neck, back and upper extremities. Subsequent to said injury, the Plaintiff [Jason Elkins] was caused to obtain medical treatment, *295 including surgery, has incurred medical bills, , and has a permanent partial disability or a permanent total disability as a consequence of the accident or injuries described above. He has incurred medical bills for treatment and will continue to do so in the future. He has suffered a loss of earnings and will in the future. He has endured great pain and suffering and mental anguish and will in the future. His injuries are permanent in nature.
“Plaintiff Paula Elkins has suffered and will in the future continue to suffer a loss of consortium as a result of the above described injuries of her husband Jason Elkins.
“WHEREFORE, [the Elkinses] demand judgment against the Defendants, including the fictitious party Defendants, in a sum which will fairly and adequately compensate the Plaintiff [Jason Elkins] for his injuries and damages sustained. Further, Plaintiffs request that the jury award punitive damages to [the Elkins-es] in an amount which will adequately reflect the enormity of the Defendants’ wrongful act and which will effectively ■prevent other similar wrongful acts.

“COUNT FOUR

“COMBINED AND CONCURRING NEGLIGENCE OR WANTONNESS
“12. [The Elkinses reallege] the allegations in Counts I through III as if set out herein [in their] totality.
“13. The negligent or wanton conduct of one or more fictitious parties, whose names are otherwise unknown to [the Elkinses] but will be added by amendment when ascertained, and whose identities as set forth in paragraph 8 of the Complaint are hereby incorporated by reference as if the same had been fully set forth herein, combined and/or concurred with that of the named or unnamed Defendants to cause the damages suffered by [the Elkinses] as set forth above in the preceding counts.
“WHEREFORE/ . [the Elkinses] demand judgment against the Defendants, including the' fictitious party Defendants, in a sum which will fairly’and adequately compensate the Plaintiff [Jason Elkins] for his injuries and damages sustained. Further, [the Elkinses] request that the jury award punitive damages to [the Elkinses] in an amount which will adequately reflect the enormity of the Defendants’ wrongful act and which will effectively prevent other similar wrongful acts.

“COUNT FIVE ■

“BREACH OF CONTRACT/WARRANTY
“15[2] Counts One through Four are hereby realleged and incorporated by reference as if the same had been fully set out herein.
“16. One or more of the non-employer fictitious party Defendants listed and described in the caption and in paragraph 8 of the First Amendment to Complaint breached a contract or warranty of which Plaintiff [Jason Elkins] was a third party beneficiary, and which breach proximately caused the accident of March 7, 2013, in which Plaintiff [Jason Elkins] was injured.
“17. As a proximate result of said accident, the Plaintiff [Jason Elkins] suffered injuries to his head, neck, back and upper extremities. Subsequent to said injury, the Plaintiff [Jason Elkins] was caused to obtain medical treatment, *296 including surgery, has incurred medical bills, and has a permanent partial disability or a permanent total disability as a consequence of the accident or injuries described above. He has incurred medical bills for treatment and will continue to do so in the future. He has suffered a loss of earnings and will in the future. He has endured great pain and suffering and mental anguish and will in the future. His injuries are permanent in nature.
“18. Plaintiff Paula Elkins has suffered and will in the future continue to suffer a loss of consortium as a result of the above described injuries of her husband Jason Elkins.
“WHEREFORE, [the Elkinses] demand judgment against the Defendants, including the fictitious party Defendants, in a sum which will fairly and adequately compensate the Plaintiff [Jason Elkins] for his injuries and damages sustained. Further, [the Elkinses] request that the jury award punitive damages to [the El-kinses] in an amount which will adequately reflect the enormity of the Defendants’ wrongful act and which will effectively prevent other similar wrongful acts.”
(Capitalization in original; emphasis added.)
The Elkinses again amended their complaint to add as defendants Farmington Casualty Company (the workers’ compensation insurance carrier for TDY) and Sedgwick Claims Management Services, Inc. (the third-party administrator and/or claims handler for TDY and/or Farming-ton). The third amendment to the complaint added count six, alleging the tort of outrage, and count seven, alleging civil conspiracy against TDY, Farmington, and Sedgwick.
TDY filed a motion to dismiss counts two through five as to it. The co-employees filed a motion for á summary judgment “on all claims asserted against them.” In a footnote in their summary-judgment motion, the co-employees stated:
“The [Elkinses’] November 5, 2014 original complaint contained only one count (workers’ compensation) against TDY Industries, LLC. The [Elkinses’] March 6, 2015 ‘First Amendment to Complaint’ contained three additional claims: Count Two (co-employees’ willful conduct); Count Three (non-employer fictitious parties’ willful conduct); arid Count Four (fictitious parties’ negligence or wantonness). The amended complaint adds the additional co-employee defendants: Gabe Collins; Jeff Carroll; and Stan Maguire. It appears that the only claims asserted against the individual Defendants are found in Count Two. Regardless, Defendants assert there are no genuine issues of material facts of any kind which could establish any liability for them.”
On March 12, 2015, the trial court granted TDY’s motion to dismiss counts two through five of the Elkinses’ complaint as amended as to TDY. On that same day, the trial court entered a summary judgment in favor of the co-employees as to count two of the Elkinses’ amended complaint. The trial court certified the judgment as to count two as final pursuant to Rule 54(b), Ala. R. Civ. P. After the trial court entered its Rule 54(b) order, the Elkinses appealed the summary judgment in favor of the co-employees.
II.
An appeal will not lie from a nonfinal judgment. Robinson v. Computer Servicenters, Inc., 860 So.2d 299, 302 (Ala. 1978). “A ruling that disposes of fewer than all claims or relates to fewer than all parties in an action is generally not final as to any of the parties or any of the claims. *297 See Rule 54(b), Ala. R. Civ. P.” Wilson v. Wilson, 736 So.2d 633, 634 (Ala.Civ.App. 1999). When an action involves multiple claims or parties, Rule 54(b) gives the trial court the discretion to “direct the entry of a final judgment as to one or more but fewer than all of the claims or parties.” If a judgment is properly certified as final pursuant to Rule 54(b), an appeal will lie from that judgment.
“[I]f it is clear and obvious from the language used by the trial court in its order that the court intended to enter a final order pursuant to Rule 54(b), then we will treat the order as a final judgment. ...” Schneider Nat’l Carriers, Inc. v. Tinney, 776 So.2d 753, 755 (Ala.2000), summarizing the holding in Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 87 (Ala.1985). In Sho-Me Motor Lodges, the trial court’s order clearly indicated that the court intended to enter an order pursuant to Rule 54(b) because the order, clearly quoting Rule 54(b), stated: ‘“The Court further finds there is no just reason for delay in the entry of said final judgment.’ ” 466 So.2d at 87. And in Schneider National Carriers, Inc., we recognized the existence of a Rule 54(b) certification based on the fact that the trial court specifically cited Rule 54(b).
In the instant case, the trial court’s summary-judgment order states:
“There being no genuine issue of undisputed material facts, the Motion for Summary Judgment on Count Two filed by the Defendants Gabriel Collins, Jeff Carroll and Stanley Maguire is hereby GRANTED. There being no just reason for a delay, said Judgment is made a Final Judgment as to the Defendants, Gabriel Collins, Jeff Carroll and Stanley Maguire.”
(Capitalization in original.) Although the order does not mention Rule 54(b), it does use the “no just reason for delay” language from that rule this Court has previously recognized as sufficient to indicate an intent to certify an order as a final order under Rule 54(b). However, the order the trial court certified as final does not dispose of all claims against the co-employees; it does not dispose of counts three through five as to the co-employees. The prayers for relief in counts two through five are identical. Even though counts three through five do not specifically allege claims against the co-employees, the prayer for relief in each of those counts demands relief from “the Defendants, including the fictitious party Defendants.” Accordingly, the trial court’s summary judgment in favor of the co-employees as to only count two of the Elkins-es’ amended complaint does not dispose of all claims against the co-employees. We cannot overlook the absence of a final judgment, a matter affecting our jurisdiction, by assuming that the trial court would certify its judgment as final pursuant to Rule 54(b) as to the claims remaining against the co-employees.
III.
“When it appears from the record that the appeal was taken from an order which was not final, but which could have been made final by a Rule 54(b) certification, we will remand the case to the trial court for a determination as to whether it chooses to certify the order as final, pursuant to Rule 54(b), and, if it so chooses, to enter such an order and to supplement the record to reflect that certification. The judgment will be taken as final as of the date the 54(b) certification is entered....
“... [I]f this Court remands the case to the trial court for the opportunity of making such a certification, the trial court will have the limited jurisdiction to *298 enter a 54(b) certification if, in its discretion, it decides the entry of such a certification is appropriate.”
Foster v. Greer & Sons, Inc., 446 So.2d 605, 609-10 (Ala.1984), overruled on other grounds, Ex parte Andrews, 520 So.2d 507, 510 (Ala.1987).
We remand this-ease for the. trial court (1) to make the interlocutory order of December 28,2015, a final judgment as to the co-employees relative to counts three, four, and five pursuant to Rule 54(b), Ala. R, Civ. P.; (2) to adjudicate the remaining claims against all parties, thus making the interlocutory order of December 28, 2015, final and appealable; or (3) to take no action, in which event the appeal will be dismissed as being from a nonfinal judgment. If the trial court elects to enter the Rule 54(b) certification or any other final judgment, a supplemental record reflecting such action should be prepared and forwarded to this Court within 21 - days from the date this opinion is released. The judgment will be considered final as of the date the new order is entered. If no supplemental record is forwarded to this Court within 21 days of the date this opinion is released, this appeal will be dismissed.
REMANDED.*
BOLIN, PARKER, MURDOCK, and BRYAN, JJ., concur.

. See § 25-5-11(c)(2), Ala.Code 1975 (defining "willful conduct” to include "[t]he willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal”).

. The Elkinses apparently misnumbered the first paragraph in count five, which was added as a separate amendment to the complaint. There appears to be no paragraph 14.

 Note from the reporter of decisions: On September 14, 2016, having received no supplemental record, the Supreme Court dismissed the appeal.